# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

### CASE NO. 0:19-cv-61974-RS

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC., d/b/a BANG ENERGY, a Florida corporation,<br><br>      Plaintiff,<br>vs.<br><br>MONSTER BEVERAGE CORPORATION, a Delaware corporation, MONSTER ENERGY COMPANY, a Delaware corporation, REIGN BEVERAGE COMPANY, LLC, a Delaware limited liability company, ENERGY BEVERAGES, LLC, a Delaware corporation, CSC CORPORATE DOMAINS, INC., a Delaware corporation, MARKERLY, INC., a California corporation, JENNIFER QUILLEN, an individual, BRETT MARTIN, an individual, CHRISTIN KUBSCH, an individual, CRYSTAL BOWLEY-REAGAN, an individual, SUMMER SHORES, an individual, AMBER N. KILLMON, an individual, AMANDA LIGHT, an individual, CRYSTAL CARDER, an individual, LAURA DAWSON, an individual, ARIANNA JONAE HENDERSON, an individual, KRISTIN WONG, an individual, JOHN DOES 1 – 200, JANE AND JOHN DOE INFLUENCERS 1 – 200, and ABC CORPORATIONS 1 – 100,<br><br>      Defendants. | Case No. 0:19-cv-61974-RS<br><br>**DEFENDANTS MONSTER BEVERAGE CORPORATION, MONSTER ENERGY COMPANY, REIGN BEVERAGE COMPANY, LLC, AND ENERGY BEVERAGES, LLC's MOTION FOR A MORE DEFINITE STATEMENT AND MOTION TO DISMISS** |

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

TABLE OF CONTENTS

Page

I.   INTRODUCTION & BACKGROUND ..........................................................................1

II.  ARGUMENT ...........................................................................................................4

A.   VPX's Complaint Consists of Compulsory Counterclaims that VPX Failed
     to Plead in the California Litigation........................................................................4

     B.   VPX's Complaint Is a Shotgun Pleading.............................................................8

          1.   VPX impermissibly incorporates disparate legal theories
               into each of its causes of action. .............................................................9

          2.   VPX's treatment of four distinct Monster entities as a
               single defendant is improper. ................................................................13

     C.   VPX Cannot Establish Personal Jurisdiction over Either Monster
          Beverage Corporation or Energy Beverages, LLC .............................................14

          1.   Because it is a mere holding company, Monster Beverage is
               not subject to personal jurisdiction. .......................................................15

          2.   Energy Beverages did not subject itself to jurisdiction by
               registering a website domain name.........................................................18

III. CONCLUSION........................................................................................................19

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC,*
    2019 WL 3716775 (S.D. Fla. Aug. 7, 2019).................................................................13

*Air Turbine Tech., Inc. v. Atlas Copco AB,*
    235 F. Supp. 2d 1287 (S.D. Fla. 2002) .......................................................................16

*Allen v. ConAgra Foods, Inc.,*
    2013 WL 4737421 (N.D. Cal. Sept. 3, 2013) .............................................................11

*AmeriMortgage Bankers, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC,*
    2010 WL 11506358 (S.D. Fla. Mar. 2, 2010)................................................................4

*Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.,*
    77 F.3d 364 (11th Cir. 1996) ........................................................................................3

*Bailey v. Janssen Pharm., Inc.,*
    288 F. App'x 597 (11th Cir. 2008) ...............................................................................3

*Baker v. Gold Seal Liquors, Inc.,*
    417 U.S. 467 (1974)......................................................................................................8

*Bickerstaff Clay Prod. Co. v. Harris Cty.,*
    89 F.3d 1481 (11th Cir. 1996) ......................................................................................8

*Carillon Importers v. Frank Pesce Grp,*
    913 F. Supp. 1559 (S.D. Fla. 1996) ............................................................................11

*Cesnik v. Edgewood Baptist Church,*
    88 F.3d 902 (11th Cir. 1996) ........................................................................................9

*Chapman v. AI Trans.,*
    229 F.3d 1012 (11th Cir. 2000) ....................................................................................8

*CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione,*
    2011 WL 3268386 (E.D. La. July 28, 2011) .................................................................4

*Circuitronix, LLC v. Shenzen Kinwong Elec. Co.,*
    2018 WL 7287192 (S.D. Fla. Jan. 31, 2018) ..............................................................13

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014)..................................................................................................14

*DeZinno v. McClain Printing Co.,*
    2007 WL 9709709 (S.D. Fla. Apr. 19, 2007) .............................................................18

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

TABLE OF AUTHORITIES (cont.)

Page(s)

*Drenberg v. Focus! . . . On Surety, LLC*,
    2013 WL 6768667 (M.D. Fla. Dec. 20, 2013) .............................................................. 10

*Embree v. Wyndham Worldwide Corp.*,
    770 F. App'x 658 (11th Cir. July 16, 2019) .................................................................... 9

*Fox Chem. Co. v. Amsoil, Inc.*,
    445 F. Supp. 1355 (D. Minn. 1978) ............................................................................... 5

*Goforit Entm't LLC v. Digimedia.com L.P.*,
    513 F. Supp. 2d 1325 (M.D. Fla. 2007) .................................................................... 3, 19

*Goldstein v. Johnson & Johnson*,
    2019 WL 289290 (S.D. Fla. Jan. 21, 2019) ........................................................ 3, 14, 16

*Harrison v. Facebook, Inc.*,
    2019 WL 1090779 (S.D. Ala. Jan. 17, 2019) ............................................................... 19

*Horizon Aggressive Growth, LP. v. Rothstein–Kass, PA*,
    421 F.3d 1162 (11th Cir. 2005) ................................................................................... 18

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,
    162 F.3d 1290 (11th Cir. 1998) .............................................................................. 3, 9, 12

*Lane v. Capital Acquisitions & Mgmt. Co.*,
    2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ............................................................... 13

*Lee-Bolton v. Koppers Inc.*,
    2013 WL 11522040 (N.D. Fla. Sept. 9, 2013) ........................................................ 16, 17

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ................................................................................... 13

*McNeil Nutritionals, LLC v. Sugar Ass'n*,
    2006 WL 8454231 (D. Del. Mar 29, 2006) ......................................................... 2, 5, 8

*MeterLogic, Inc. v. Copier Sols., Inc.*,
    126 F. Supp. 2d 1346 (S.D. Fla. 2000) ......................................................... 16, 17, 18

*Miami Herald Pub. Co., Div. of Knight-Ridder Newspaper v. Ferre*,
    636 F. Supp. 970 (S.D. Fla. 1985) ................................................................................ 4

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
    702 F.3d 1312  (11th Cir. 2012) ................................................................................... 11

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

TABLE OF AUTHORITIES (cont.)

Page(s)

*N. Am. Clearing, Inc. v. Brokerage Compt. Sys., Inc.,*
2009 WL 1513389 (M.D. Fla. May 27, 2009) ............................................................... 17

*Next Century Commc'ns Corp. v. Ellis,*
318 F.3d 1023 (11th Cir. 2003) .................................................................................. 11

*Papadopoulos v. Douglas,*
2001 WL 877608 (5th Cir. 2001) ............................................................................. 2, 4

*Plant v. Blazer Fin. Servs.,*
598 F.2d 1357 (5th Cir. 1979) ...................................................................................... 4

*Pochiro v. Prudential Ins. Co. of Am.,*
827 F.2d 1246  (9th Cir. 1987) ..................................................................................... 4

*Republic Health Corp. v. Lifemark Hospitals of Fla., Inc.,*
755 F.2d 1453 (11th Cir. 1985) ................................................................................ 2, 4

*Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.,*
426 F.2d 709 (5th Cir. 1970) ....................................................................................... 8

*Robb v. Rahi Real Estate Holdings LLC,*
2011 WL 2149941 (S.D. Fla. May 23, 2011) ................................................................. 8

*Santilli v. van Erp,*
2018 WL 3956309 (M.D. Fla. Aug. 17, 2018) ............................................................. 19

*Springs v. First Nat'l Bank of Cut Bank,*
835 F.2d 1293 (9th Cir. 1988) ..................................................................................... 4

*Thermal Design, Inc. v. Guardian Bldg. Prod., Inc.,*
2012 WL 2254195 (E.D. Wis. June 15, 2012) ............................................................... 5

*Thompson v. Carnival Corp.,*
174 F. Supp. 3d 1327 (S.D. Fla. 2016) ....................................................................... 15

*TM Brands, LLC v. Casa Dimitri Corp.,*
2016 WL 8813759 (S.D. Fla. Aug. 5, 2016) ................................................................. 8

*United Credit Recovery, LLC v. Bexten,*
2012 WL 750299 (M.D. Fla. Mar. 7, 2012) ................................................................ 15

*United Fruit Co v. Standard Fruit & S.S. Co.,*
282 F. Supp. 338 (D. Mass 1968) ................................................................................. 4

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

TABLE OF AUTHORITIES (cont.)

Page(s)

*Vanover v. NCO Fin. Servs., Inc.*,
857 F.3d 833 (11th Cir. 2017) ...................................................................... 12

*Verizon Trademark Servs., LLC v. Producers, Inc.*,
810 F. Supp. 2d 1321 (M.D. Fla. 2011)...................................................... 15

*Weiland v. Palm Beach Cty. Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ...................................................... 3, 8, 13

*Woelfel v. Life Partners, Inc.*,
2014 WL 7238196 (S.D. Fla. Dec. 17, 2014) ............................................. 8

*Worthen by & through Worthen v. Cracker Barrel Old Country Store, Inc.*,
2005 WL 8159727 (M.D. Fla. Dec. 27, 2005)............................................. 15

*Yakoub v. Tradewinds Airlines, Inc.*,
2016 WL 7229691 (S.D. Fla. Dec. 14, 2016) ............................................. 9

**State Cases**

*Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*,
925 So. 2d 1156 (Fla. 4th DCA 2006) ........................................................ 17

*Enic, PLC v. F.F. S. & Co.*,
870 So. 2d 888 (Fla. 5th DCA 2004) .......................................................... 17

*Two Worlds United v. Zylstra*,
46 So. 3d 1175 (Fla. 2d DCA 2010) ........................................................... 19

*Walt Disney Co. v. Nelson*,
677 So.2d 400 (Fla. 5th DCA 1996) ........................................................... 15

**Statutes**

Fla. Stat.§ 48.193 .................................................................................... 15, 18

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS
5660099

## I.     INTRODUCTION & BACKGROUND

In September 2018, Monster Energy Company sued energy-drink manufacturer Vital Pharmaceuticals, Inc. ("VPX") and its CEO Jack Owoc.  Monster's suit, filed in the Central District of California, described VPX's pervasive false advertising of its energy drink BANG and the misleading claims that VPX makes about Monster.  *See Monster Energy Company v. Vital Pharmaceuticals, Inc*, No. 5:18-cv-1882 (C.D. Cal., filed Sept. 4, 2018) [hereinafter, "C.D. Cal."].

VPX has a long history of putting untested and potentially dangerous chemicals in its products and engaging in consumer deception.  In 2010, for example, the National Advertising Division of the Better Business Bureau found that VPX's claims about its product "overstated the results of the research," misleadingly drew comparisons to "unrelated studies," and used data "insufficiently reliable to support [its] claims."[1]  Similarly, in 2015, the FDA ordered VPX to "immediately cease" selling adulterated and illegal dietary supplements.[2]  And VPX products were likewise the subject of an enforcement action by the Oregon Attorney General based on their view that these products contain a synthetic chemical "similar to amphetamine," "never studied in humans," and linked to "hemorrhagic stroke."[3]

In April 2019, Monster amended its complaint to identify additional, new evidence of unfair and unlawful competition by VPX and Owoc.  (*See* C.D. Cal. ECF No. 61.)  Shortly thereafter, Owoc posted on Instagram that VPX's "legal counterattack against Monster will be unrelenting."[4]  Just months after Owoc's Instagram threat, VPX, fulfilling Owoc's promise, filed this current lawsuit.

VPX pleads a grab bag of retaliatory allegations against various Monster entities: (1) Monster Beverage Corporation; (2) Monster Energy Company; (3) Reign Beverage Company,

---

[1]     *See*    https://www.naturalproductsinsider.com/claims/nad-meltdown-capsules-studies-dont-support-claims.

[2]     *See*    https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/vital-pharmaceuticals-inc-dba-vpx-sports-446357-04242015.

[3] *See Oregon v. General Nutrition Corp.*, No. 15-cv-28591 at 8, 13-14 (Circuit Ct. Or., filed Oct. 22, 2015), *available at* https://www.casewatch.net/ag/or/gnc/complaint.pdf

[4] *See* https://www.instagram.com/p/BxLtSbans3X/.

(Continued...)

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

LLC; and (4) Energy Beverages, LLC.  VPX makes dozens of accusations against these Monster entities, ranging from allegations of a nefarious "conspiracy by [Monster] and its highest officials" to suppress health information about Monster (ECF No. 1 ["Compl."] ¶ 2); to accusations that Monster created "a shameless knockoff" of BANG (*id.* ¶ 6); to allegations of "despicable acts of interference" by Monster and its legal counsel arising out of document-preservation notices sent to potential third-party witnesses (*id.* ¶ 149.)  VPX, moreover, asserts that all of these disparate acts were committed by each of the four named Monster entities.  (*See, e.g.*, *id.* at p. 49 (asserting claim against "All Defendants"); *id.* at p. 53 (asserting claim against "Monster Defendants").)[5]

 VPX's complaint should be dismissed for three, independent reasons:

 *First*, VPX attempts to bring claims here that it was required to bring as compulsory counterclaims in California.  A counterclaim is compulsory if it bears a "logical relationship" to the earlier-filed claim.  *Republic Health Corp. v. Lifemark Hospitals of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985).  VPX's complaint—its "counterattack" to Monster's already-pending lawsuit—passes this test with ease.  This suit involves the same parties, products, advertising claims, and causes of action as the California action.  For example, Monster alleges in the California action that VPX falsely claims that BANG contains a compound called creatine.  (C.D. Cal. Compl. ¶ 3.)  Here, VPX asserts the other side of that same coin:  that *Monster* falsely claims that BANG does *not* contain creatine.  (Compl. ¶ 83.)  As courts have repeatedly recognized, counterattacks like VPX's must be filed as counterclaims or are properly dismissed.  *See, e.g.*, *McNeil Nutritionals, LLC v. Sugar Ass'n*, 2006 WL 8454231, at *2 (D. Del. Mar 29, 2006) (dismissing as compulsory counterclaims lawsuit against competitor because the later-filed suit was "merely the flip side of the [competitor's] contentions in the California Action"); *Papadopoulos v. Douglas*, 2001 WL 877608,  at *2 (5th Cir. 2001) (dismissing later-filed suit where both suits "include allegations of Lanham Act violations and unfair trade practices, arose around the same time, 1997 and 1998, and both concern each business's manner of selling [its products]").

 *Second*, even if VPX's claims are not compulsory counterclaims in the California action,

---

[5] VPX also named as defendants CSC Corporate Domains, Inc.; Markerly, Inc.; and a number of individuals.  (ECF No. 1.)  Because VPX did not serve these non-Monster-affiliated defendants until months after serving the Monster entities, the various defendants' deadlines to file responsive pleadings are misaligned.  The defendants have therefore been unable to file a single joint motion to dismiss.

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

VPX's scattershot complaint fails to give the Monster entities "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).  VPX incorporates all of its varied accusations into *each* cause of action and asserts them against *every* Monster defendant.  (*See* Compl. ¶¶ 151, 167, 172, 178, 185, 194, 203, 208.)  VPX's indiscriminate pleading makes it impossible for Monster to respond meaningfully to its claims.  Monster can't be sure what allegations are part of what cause of action, or even which allegations pertain to what Monster entities.  Under established Eleventh Circuit law, VPX's shotgun pleading should be dismissed.  *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (explaining that when a complaint "begin[s] with a long list of general allegations" that are then "incorporated by reference into each count of the complaint," the trial judge should "quickly demand repleader").[6]

   *Third*, VPX seeks to hale into court Monster entities that took no part in the alleged conduct.  Monster Beverage Corporation, for example, is simply a holding company for the membership units of Monster subsidiaries.  (Declaration of Rodney Sacks ["Sacks Decl."] ¶ 7)  Energy Beverages, LLC is merely the registrant for a Monster-affiliated website.  (Sacks Decl. ¶ 4.)  In carrying out these limited activities, neither Monster entity purposefully availed itself of this forum.  Thus, under clear caselaw, both entities should be dismissed for lack of personal jurisdiction.  *See Goldstein v. Johnson & Johnson*, 2019 WL 289290, at *3 (S.D. Fla. Jan. 21, 2019) (finding "no basis to assert specific jurisdiction" over a "mere holding company"); *Goforit Entm't LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1331 (M.D. Fla. 2007) (dismissing "site registrant" for lack of personal jurisdiction because "registration of . . . site names" would not lead a defendant to "reasonably anticipate being haled into court in Florida").

---

[6] Accordingly, Monster is not yet required to fully respond on the merits.  As the Eleventh Circuit has explained, "a defendant faced with a [shotgun] complaint . . . is not expected to frame a responsive pleading.  Rather, the defendant is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *see also Bailey v. Janssen Pharm., Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008) ("[W]e have encouraged defendants to make motions for more definite statements").  While Monster has asserted in this motion all the grounds for dismissal reasonably available to it, Monster is unable to respond to VPX's individual causes of action until VPX clarifies its pleading.  Monster reserves the right to move to dismiss VPX's complaint for failure to state a claim under Rule 12(b)(6), after the Court resolves the instant motion.  *See* Fed. R. Civ. P. 12(a)(4)(A)-(B).

(Continued...)

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

## II.    ARGUMENT

### A.    VPX's Complaint Consists of Compulsory Counterclaims that VPX Failed to Plead in the California Litigation

A counterclaim is compulsory if it exists when the answer is filed[7] and "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a).  In making this determination, the Eleventh Circuit uses the "logical relationship test." *AmeriMortgage Bankers, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*, 2010 WL 11506358, at *5 (S.D. Fla. Mar. 2, 2010) (citing *Republic Health.*, 755 F.2d at 1455).

The "logical relationship test" is "a loose standard which permits a 'broad realistic interpretation in the interest of avoiding a multiplicity of suits.'"  *Miami Herald Pub. Co., Div. of Knight-Ridder Newspaper v. Ferre*, 636 F. Supp. 970, 973 (S.D. Fla. 1985) (citing *Plant v. Blazer Fin. Servs.*, 598 F.2d 1357, 1361 (5th Cir. 1979)).  The test is liberally applied to effectuate the goal of "prevent[ing] multiplicity of actions and [achieving] resolution in a single lawsuit of all disputes arising out of common matters."  *AmeriMortgage*, 2010 WL 11506358, at *5; *see also Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1252  (9th Cir. 1987) (explaining that "the Supreme Court [has] admonished the courts that [Rule 13(a)'s] standard was to be read broadly").

Applying this test, courts routinely find that claims between competitors involving each other's products and trade practices are compulsory.  *See CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 2011 WL 3268386, at *7 (E.D. La. July 28, 2011) ("Clearly these claims are logically connected [because] they revolve around the same competitive relationship and the use of the same product information."); *Papadopoulos v. Douglas*, 268 F.3d 1063 (5th Cir. 2001) (finding that claims were compulsory where both suits "include allegations of Lanham Act violations and unfair trade practices, arose around the same time, 1997 and 1998, and both concern each business's manner of selling [its products]"); *United Fruit Co v. Standard Fruit & S.S. Co.*, 282 F. Supp. 338,

---

[7] All of VPX's claims had matured by the time VPX filed its answer to Monster's California complaint on July 2, 2019.  *See* Compl. ¶ 59  (allegations of product safety date to 2004); *id.* ¶¶ 117-135 (social media posts date from April 2019); *id.* ¶ 148 (VPX "learned" Monster had sent preservation notices on May 2, 2019); *id.* ¶ 24 (Truth About Bang website discontinued on June 3, 2019); *id.* ¶¶ 145, 146 (VPX photographed Monster's alleged in-store "interference" beginning May 30, 2019).  *See also Springs v. First Nat'l Bank of Cut Bank*, 835 F.2d 1293, 1296 (9th Cir. 1988) (counterclaim had matured where negligent act occurred before answer was due).

340 (D. Mass 1968) (finding that claims were compulsory where both suits "concerned the relative rights and liabilities of the parties in the continued use of their respective labels").

*McNeil Nutritionals, LLC v. Sugar Association,* 2006 WL 8454231, at *2 (D. Del. Mar 29, 2006), is instructive. In that case, McNeil, the manufacturer of the artificial sweetener Splenda, sued a trade-group of sugar manufacturers (the Sugar Association) in Delaware. *Id.* In a prior California case, the Sugar Association had sued McNeil under various legal theories "based on McNeil's advertising Splenda as containing real sugar, as being a natural, no-calorie form of sugar, as being healthy, and as tasting like sugar." *Id.* at *1. Following the commencement of the California litigation, the Sugar Association launched a website called the "Truth About Splenda," which "contain[ed] many of the same allegations of false advertising that [were] alleged in the California Action." *Id.* In response, McNeil filed the Delaware suit, "alleging that the 'facts' stated on the website are not facts at all, but rather deceptions designed to mislead the public about the safety of Splenda." *Id.*

The Delaware court dismissed McNeil's suit. It reasoned that it was "clear that McNeil's contentions are merely the flip side of the Sugar Association's contentions in the California Action." *Id.* at *2. Even though there was "some uncommon ground between the two suits," they "share[d] one fundamental question, that is, whether Splenda is either safe and/or healthy, or unsafe and/or unhealthy." *Id.* In those circumstances, "it would be a poor use of this country's limited judicial resources to answer that question in parallel proceedings." *Id.*[8]

VPX's complaint in this action fails for these same reasons. In fact, the close relationship between this lawsuit and Monster's California action is apparent from the face of VPX's complaint. VPX's complaint repeatedly references Monster's California action, casting Monster's California complaint as part and parcel of Monster's "widespread smear campaign against Bang Energy." (Compl. ¶ 6(b); *see also id.* ¶¶ 22, 73-77, 141, 148-50.) Moreover, VPX devotes a sub-

---

[8] Other courts facing similar facts have also held that such counterclaims are compulsory. *See, e.g.,* *Thermal Design, Inc. v. Guardian Bldg. Prod., Inc.,* 2012 WL 2254195, at *13 (E.D. Wis. June 15, 2012) ("In its counterclaim, Guardian alleges that Thermal Design's statements that the Energy Saver endangers worker safety are false. This is essentially the same issue presented by Thermal Design's false advertising claims against Guardian: whether the Energy Saver provides OSHA-compliant fall protection for workers."); *Fox Chem. Co. v. Amsoil, Inc.,* 445 F. Supp. 1355, 1361 (D. Minn. 1978) ("It seems apparent that plaintiff's Lanham Act claim and defendant's libel claim stem from the same aggregate of operative facts, i.e., defendant's representations about its oils.").

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

section of its complaint to describing Monster's amended complaint in California, asserting that Monster's amended complaint was "a choreographed piece of the disparagement puzzle."  (*Id.* ¶141; *see also id.* at p. 43 ("Monster Expands Its Legal Attack Against Bang Energy")).)  VPX also claims that Monster interfered with "Bang Energy's business relationships and sales" by sending document-preservation notices to VPX's business partners and "advising [them] of Monster's litigation against Bang Energy."  (Compl. ¶¶ 22.)

There's a reason why VPX's complaint repeatedly mentions the Monster lawsuit:  The two lawsuits are part of the same core controversy.  Indeed, even a cursory review of the two complaints displays the factual overlap between the suits:

| Issue | VPX Allegation in this Action | Parallel Issue in C.D. Cal. Action |
|---|---|---|
| Whether BANG contains creatine. | "Monster posted or caused to be posted false and disparaging statements that 'Bang DOES NOT contain creatine, much less a special or enhanced form of creatine.'"  (Compl. ¶ 85.) | "BANG's 'Super Creatine' compound is neither 'super' nor 'creatine.'  In fact, despite what Bang prominently claims on its cans, there is no creatine in BANG."  (C.D. Cal. ECF No. 61 ¶ 3.) |
| Whether Monster's products provide energy. | "Recent studies have shown that [Monster's] products have *zero* positive effect on energy or mood."  (Compl. ¶ 3.) | "[VPX and Owoc] have claimed, for example, that Monster drinks . . . 'have zero effect on performance.'"  (C.D. Cal. ECF No. 61 ¶ 149.) |
| Whether VPX claims BANG can "reverse mental retardation." | "Monster claims that Owoc stated that: "Bang Can 'Reverse Mental Retardation'.""  (Compl. ¶ 94.) | "BANG's . . . chief marketing draw is its 'Super Creatine,' a [] compound that Owoc claims can, among other things, . . . reverse 'mental retardation.'"  (C.D. Cal. ECF No. 61 ¶ 3.) |
| Whether VPX claims BANG can cure forms of dementia. | "Owoc also never stated or claimed that BANG 'can help cure' Alzheimer's, Parkinson's, Huntington's or other forms of dementia."  (Compl. ¶ 96.) | "According to Owoc and VPX, the Super Creatine compound . . . 'helps with all forms of dementia, including Alzheimer's, Parkinson's, Huntington's, and other forms of dementia.'" (C.D. Cal. ECF No. 61 ¶¶ 46-47.) |
| Whether BANG contains sufficient BCAAs and CoQ10. | "Monster also falsely attributes to Owoc and Bang Energy the claim that 'Bang contains a meaningful amount of BCAAs | "Nor has Monster submitted evidence that that other ingredients touted by BANG – including . . . CoQ10, and |

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

| Issue | VPX Allegation in this Action | Parallel Issue in C.D. Cal. Action |
|---|---|---|
| | and CoQ10.'"  (Compl. ¶ 97.) | BCAAs – are not present in sufficient quantities to have some performance benefit." (C.D. Cal. ECF No. 122 at 7.) |
| Whether VPX has a valid patent. | "Monster posted or caused to be posted false and disparaging statements that 'The United States Patent & Trademark Office (USPTO) has rejected or cancelled all claims on Jack Owoc's patent for 'Super Creatine'" (Compl. ¶ 89.) | "[T]he patent upon which Owoc and VPX rely so heavily has been finally rejected by the U.S. Patent Office during a reexamination proceeding." (C.D. Cal. ECF No. 61 ¶ 67.) |

Moreover, should these cases continue along parallel tracks, the two cases' legal claims will be inextricably intertwined.  Consider, for example, how certain findings in the California action would affect the present litigation:

- If Monster establishes in the California litigation that VPX's BANG drink does not contain creatine (C.D. Cal. ¶¶ 3, 50-59), then Monster's statements that BANG does not contain creatine cannot be "defamatory and libelous" (Compl. ¶ 88), thus defeating portions of VPX's first seven causes of action in this case.  (*See* Compl. ¶ 153 (alleging Lanham Act violation based on Monster's "representations of fact . . . [about the] qualities of Bang Energy's goods"); *id.* ¶¶ 168, 174, 179, 187, 196, 205 (six causes of action all alleging that Monster made false and misleading statements regarding VPX and VPX's products).

- Similarly, if Monster establishes in the California litigation that  (i) VPX's BANG drink does not "help[] with all forms of dementia, including Alzheimer's, Parkinson's, Huntington's, and other forms of dementia" (C.D. Cal. ECF No. 61 ¶¶ 46-47) and (ii) VPX, Owoc, and/or their agents made statements to this effect, then Monster would not have made "false and libelous" statements (Compl. ¶¶ 94-96), further defeating portions of VPX's first seven causes of action in this case.  (*See* Compl. ¶¶ 151, 153, 168, 174, 179, 187, 196, 205.)

In short, Monster's lawsuit in California and VPX's complaint in this action are "offshoots of the same basic controversy between the parties."  *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714 (5th Cir. 1970).  Because VPX's claims in this action "share [the same]

fundamental question[s]" as Monster's claims in California, "it would be a poor use of this country's limited judicial resources to [permit these] parallel proceedings." *McNeil*, 2006 WL 8454231, at *2.

*     *     *

VPX's claims in this case are compulsory counterclaims to Monster's California litigation that VPX failed to plead. "A counterclaim which is compulsory but is not brought is thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974). Thus, as courts in this District and elsewhere routinely find, VPX's claims must be dismissed. *See TM Brands, LLC v. Casa Dimitri Corp.*, 2016 WL 8813759, at *2 (S.D. Fla. Aug. 5, 2016) (dismissing compulsory counterclaims); *Robb v. Rahi Real Estate Holdings LLC*, 2011 WL 2149941, at *8 (S.D. Fla. May 23, 2011) (same).

**B.     VPX's Complaint Is a Shotgun Pleading**

For decades, "[t]he Eleventh Circuit has roundly, repeatedly, and consistently condemned shotgun pleadings." *Woelfel v. Life Partners, Inc.*, 2014 WL 7238196, at *1 (S.D. Fla. Dec. 17, 2014) (citation omitted)). Shotgun pleadings are pleadings that "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. The Eleventh Circuit has "frequently railed about the evils of shotgun pleadings and urged district courts to take a firm hand." *Chapman v. AI Trans.*, 229 F.3d 1012, 1027 (11th Cir. 2000).

Here, VPX alleges a hodgepodge of unrelated conduct against four distinct Monster entities, then incorporates *each* disparate allegation into *each* cause of action against *each* defendant. (*See* Compl. ¶¶ 151, 167, 172, 178, 185, 194, 203, 208.) VPX's complaint is thus a "typical shotgun pleading," since several "counts present more than one discrete claim for relief." *Bickerstaff Clay Prod. Co. v. Harris Cty.*, 89 F.3d 1481, 1484 (11th Cir. 1996). VPX's shotgun-pleading must be dismissed for two independent reasons.

1.     <u>VPX impermissibly incorporates disparate legal theories into each of its causes of action.</u>

VPX incorporates 48 pages of general allegations into each of its eight causes of action. (*See* Compl. ¶ 151 ("Bang Energy re-alleges and incorporates by reference Paragraphs 1 through 150 as though fully set forth herein."); *see also* ¶¶ 167, 172, 178, 185, 194, 203, 208 (same).)

- 8 -

The Eleventh Circuit has criticized this precise practice, explaining that a complaint that "incorporated by reference" a "long list of general allegations" into "each count of the complaint" was a shotgun pleading.  *Johnson Enterprises*, 162 F.3d at 1333.  This manner of pleading is "in complete disregard of the principle that separate, discrete causes of action should be plead[ed] in separate counts."  *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir. 1996).  Such pleading obfuscates the true allegations in a complaint and results in each cause of action comprising multiple "discrete theories of recovery."  *Id.*  (criticizing complaint that incorporated "ninety-nine numbered paragraphs of factual recitations" into each of three counts, resulting in those counts comprising "at least nine discrete theories of recovery").

A shotgun complaint of this sort requires dismissal under Rule 12(e) and Eleventh Circuit precedent.  In *Yakoub v. Tradewinds Airlines, Inc.*, 2016 WL 7229691, at *2 (S.D. Fla. Dec. 14, 2016), for example, the court dismissed a complaint that failed to "untangle [the] allegations into separate claims."  By including different legal theories—such as "retaliation, failure to promote, national origin discrimination, religious discrimination, hostile work environment, [and] discriminatory wage practices"—into each of several causes of action, the plaintiff had made it impossible for "the defendant to this action (let alone the Court) [to] reasonably know what the Plaintiff intends to allege."  *Id.*; *see also Embree v. Wyndham Worldwide Corp.*, 770 F. App'x 658, 660 (11th Cir. July 16, 2019) (affirming dismissal with prejudice of complaint that incorporated each of the "89 enumerated paragraphs" of general allegations within each cause of action).

For example, VPX bases its Florida Deceptive and Unfair Trade Practices Act (FDUTPA) claim on "Defendants' representations and other acts or practices as described above" and incorporates by reference all the general allegations that came before it.  (Compl. ¶ 174.)  By doing so, VPX sweeps into this single cause of action a mishmash of legal theories.  (*Id.* ¶ 168.)  VPX's complaint rambles through 48 pages of general allegations that span time and subject matter.  By pleading in this style, VPX simultaneously asserts, among other things, that

- Monster has made a "false representation" by calling its product an "energy" drink. (Compl. ¶ 4.)

- Monster enters retail stores and turns around cans of Bang, "such that . . . the BANG name and logo are no longer visible to consumers."  (*Id.* ¶ 19.)

- Monster misleads consumers by "disingenuously splitting its 16-ounce can into two servings on its label."  (*Id.* ¶ 60.)

- Monster "engaged in actionable violations of Section 5(a) of the Federal Trade Commission Act" by hiring social-media influencers.  (*Id.* ¶ 15.)

- Monster infringes VPX's trade dress by selling products that "have a black background with a contrasting, flavor-dependent, bold, brightly colored design."  (*Id.* ¶ 106.)[9]

- Monster "doggedly refuses to admit to . . . its shareholders . . . that its Monster Energy flagship product is unsafe."  (*Id.* ¶ 60.)

- Monster brought a "meritless lawsuit against Bang energy" in the Central District of California, the "true purpose" of which is to "defend its market share through litigation."  (*Id.* ¶¶ 72-73, 141.)

- Monster has committed "despicable acts of interference" by sending document preservation notices to VPX's retailers and distributors.  (*Id.* ¶ 149.)

In short, VPX's claim is a hydra.  The claim could have its roots in false advertising (*id.* ¶ 4), or maybe technical labelling violations (*id.* ¶ 60), or possibly in trade-dress infringement (*id.* ¶ 106).  It might sound in malicious prosecution (*id.* ¶ 141), or products liability (*id.* ¶ 3), or FTC violations (*id.* ¶ 15), or securities law (*id.* ¶ 60), or any number of other accusations in VPX's complaint.[10]

While each of these theories is without merit and the "facts" VPX pleads are disputed, the point for this motion is that Monster doesn't know what specific acts VPX contends support its specific claims.   VPX's approach to pleading prevents Monster—and the Court—from meaningfully assessing VPX's FDUTPA claim and determining if it fails.  The same is true for

---

[9] VPX has made this same allegation in another lawsuit it has brought against Monster in the Southern District of Florida.  (*See Vital Pharmaceuticals, Inc. v. Monster Energy Co.*, No. 19-civ-60809-Altman (S.D. Fla.), ECF No. 134, at 2 (denying VPX's motion for a preliminary injunction seeking to enjoin Monster from "using VPX's BANG trade dress or 'any trade dress that is confusingly similar to or a colorable imitation of' its BANG trade dress").)

[10] Because of these numerous and diverse factual allegations and legal theories, VPX's complaint does not fall under the narrow exception allowing for incorporation by reference.  *See Drenberg v. Focus! . . . On Surety, LLC*, 2013 WL 6768667, at *2 (M.D. Fla. Dec. 20, 2013) (explaining that incorporation by reference was not "optimal," but permitting the claim to go forward because the "limited set of facts at issue" made the claim "sufficiently clear").

(Continued...)

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

VPX's other claims.

VPX's complaint turns Monster's task of drafting a motion to dismiss into a guessing game. For instance, does VPX really intend to pursue a claim based on Monster "disingenuously splitting its 16-ounce can into two servings on its label"?  (*Id. ¶* 60.)  If so, then Monster would move to dismiss based on principles of federal preemption.[11]  Does VPX actually mean to pursue claims based on Monster's use of the phrase "unleash the beast"?  (*Id. ¶* 3.)  If so, then Monster would devote its motion to showing that such advertising is not actionable.[12]  Is VPX really pursuing trade-dress claims based on Monster's use of a "black background with a contrasting, flavor-dependent, bold, brightly colored design for the rest of the can"? (*Id. ¶* 102.) If so, then Monster would explain why VPX's use of common design elements does not receive intellectual property protection.[13]  And so on.  But it's not clear if VPX intends to rely on any of these allegations or none of them.

Real prejudice results from allowing VPX's shotgun complaint to proceed.  It not only deprives Monster of its chance to meaningfully respond to the complaint, but will affect the entire course of litigation.  "[E]xtended and largely aimless discovery will commence," "the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits," and the case will "proceed[] to trial without proper delineation of issues."  *Johnson Enterprises*, 162 F.3d at 1333.

That is precisely what would happen here.  VPX's complaint is full of potential diversions that would lead to "aimless discovery" and prevent "proper delineation of issues."  *Id.*  For

---

[11] *See, e.g.*, *Allen v. ConAgra Foods, Inc.*, 2013 WL 4737421, at *4 (N.D. Cal. Sept. 3, 2013) ("[I]f [the defendant's] serving size is properly defined under FDA regulations, Plaintiff's challenge to the serving size would be expressly preempted by the [Nutrition Labeling and Education Act's] preemption clause.").

[12] *See, e.g.*, *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) (explaining that an advertisement is permissible if it is not "empirically verifiable [such that] it can be affirmatively disproven").

[13] *See, e.g.*, *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1323 (11th Cir. 2012) (explaining that "commonly-adopted and well-known form[s] of ornamentation" are not protected); *Carillon Importers v. Frank Pesce Grp*, 913 F. Supp. 1559, 1563 (S.D. Fla. 1996) (holding that flavor-dependent labelling—using green coloring to show that the beverage was lime flavored soda—is functional and thus not protectable).

(Continued...)

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

instance, VPX devotes three pages of its complaint to describing Monster's "infringing line of energy drinks called Reign." (Compl. ¶¶ 100-109.) What VPX doesn't mention, however, is that these exact allegations are already the subject of another lawsuit currently pending in this District. *See Vital Pharmaceuticals, Inc. v. Monster Energy Company & Reign Beverage Company, LLC*, No. 0:19-cv-60809-Altman (S.D. Fla., filed March 28, 2019) [hereinafter, "Trade Dress Dispute"]. In fact, some of the allegations included in VPX's complaint in this action are copied verbatim from the complaint filed in the Trade Dress Dispute.[14]

Thus, in just these three pages of its complaint, VPX has included an entire litigation's worth of extraneous discovery and legal issues. The Trade Dress Dispute has already gone through preliminary-injunction briefing, motion-to-dismiss briefing, and discovery motions. (*See, e.g.*, Trade Dress Dispute, ECF Nos. 37, 39, 43, 44, 58, 69, 63, 79, 90, 105, 108, 112, 114, 116, 118.) In fact, VPX seems to be using this lawsuit to relitigate issues it has already lost in the Trade Dress Dispute, including, for example, VPX's motion for a preliminary injunction, which was recently denied. (Trade Dress Dispute ECF No. 134, 10/16/19 Order at 7 ("VPX has failed to meet any of the elements of a preliminary injunction.").)

Plainly, VPX cannot pursue these identical claims in two separate cases. *See Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) (explaining that the "claim-splitting doctrine" prevents a plaintiff from filing "duplicative complaints"). VPX must remove these irrelevant allegations—and others like them—from its complaint.

        2.      <u>VPX's treatment of four distinct Monster entities as a single defendant is improper.</u>

Another hallmark of shotgun pleading is the failure to "specify which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323. The failure to do so is an independent ground to dismiss a complaint. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing complaint "replete with allegations that 'the defendants' engaged in certain

---

[14] *Compare, e.g.*, Compl. ¶ 108 (alleging that Reign's labels "are nearly identical and confusingly similar to Bang Energy's own aesthetically appealing and distinctive trade dress for BANG and copies the phrase 'body fuel' from Bang Energy's trademarked tagline 'Potent Brain and Body Fuel'"), *with* Trade Dress Dispute, Dkt 1. at ¶ 2 (March 28, 2019) (alleging that Reign's label is "nearly identical and confusingly similar to VPX's own aesthetically appealing and distinctive trade dress for BANG, and also copies the phrase 'body fuel' from VPX's trademarked tagline, 'Potent Brain and Body Fuel'").

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

conduct, making no distinction among the [] defendants charged"); *Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, 2019 WL 3716775, at \*2 (S.D. Fla. Aug. 7, 2019) (dismissing complaint that failed to "specify whether the term Defendant refers to [one defendant] or [the other]").

In *Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*, 2018 WL 7287192, at \*7 (S.D. Fla. Jan. 31, 2018), for example, the plaintiff sued a parent company and its subsidiary. The complaint "lump[ed]" the two "separate corporations" "together as one entity." *Id.* at \*7. "This lumping render[ed] the [complaint] ambiguous" and did "not afford each defendant a meaningful opportunity to respond to the allegations against it." *Id.* Based on this failure alone, the court held that the "Complaint must be dismissed." *Id.* at \*7; *see also Lane v. Capital Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at \*4-5 (S.D. Fla. Apr. 14, 2006) (dismissing as "vague and conclusory" a complaint that did not distinguish between a "parent and its subsidiary," since the "individual defendants cannot determine from the face of the Complaint which acts or omissions the Plaintiffs seek to hold each of them liable").

VPX does what the plaintiffs in *Circuitronix* and *Lane* did, and the result here should be the same. Throughout its complaint, VPX pleads collectively against four distinct Monster-affiliated entities, which VPX refers to collectively as "Monster." (Compl. at p. 1.) VPX then brings all eight causes of action against all four Monster entities. (*Id.* at 49, 52-53, 55-56, 58-60.) VPX does not distinguish between the conduct of these distinct—and substantively different—entities. (*Id.*)

VPX's undifferentiated references to "Monster" throughout its complaint is particularly problematic given the key differences between the Monster entities. VPX acknowledges, for example, that Energy Beverages, LLC is merely "the registrant for the domain name called thetruthaboutbang.com." (Compl. ¶ 31.) Yet despite its narrow role as an alleged website registrant, VPX lumps Energy Beverages, LLC with the other Monster entities in allegations covering various advertising, manufacturing, and distribution conduct. Similarly, Reign Beverage Company LLC's role in the complaint is limited: According to VPX, Reign Beverages sells the newly launched "energy drink called 'Reign'" and was formed only in October 2018. (*Id.* ¶¶ 29, 105.) But despite existing for just the last year and selling a single product line, Reign Beverages is lumped into broad allegations that span the last two decades. (*E.g.*, *id.* ¶ 59 (alleging conduct "since 2004").)

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

VPX's group pleading becomes even more problematic when combined with the other uncertainties in its complaint.  As explained above, Monster cannot be sure which discrete acts VPX intends to incorporate in each cause of action.  (*See supra* section II.B.i.)  Now on top of that, Monster also cannot be sure which entity VPX claims is responsible for each discrete act.

\*        \*        \*

If VPX intends to pursue its case, it must do so in a way that enables the Monster entities to defend themselves and the Court to umpire the dispute.  VPX's complaint does not do so.  Under existing and established law, it should be dismissed.

## C.    VPX Cannot Establish Personal Jurisdiction over Either Monster Beverage Corporation or Energy Beverages, LLC

VPX brought this suit against four distinct Monster entities.  But two of those entities—Monster Beverage Corporation (a holding company) and Energy Beverages, LLC (alleged to have registered a domain name)—do not have the requisite contacts with this forum to support personal jurisdiction.  Both entities must therefore be dismissed for lack of specific personal jurisdiction.[15]

"[A] federal court sitting in Florida must conduct a two-step inquiry to determine whether it has personal jurisdiction over a non-resident defendant." *Goldstein v. Johnson & Johnson*, 2019 WL 289290, at \*1 (S.D. Fla. Jan. 21, 2019).  "The court must determine (1) whether personal jurisdiction exists over the nonresident defendant under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Id.*

To make these determinations, courts use a burden-shifting framework.  The plaintiff bears the initial burden to plead "a prima facie case for jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324 (M.D. Fla. 2011) (citing *Walt Disney Co. v. Nelson*, 677 So.2d 400, 402 (Fla. 5th DCA 1996)).  If a plaintiff has pleaded sufficient facts, the defendant

---

[15] Monster assumes that VPX is not attempting to establish general personal jurisdiction over either Monster Beverage or Energy Beverages.  In any event, neither entity is incorporated in Florida nor has its principal place of business there. (Sacks Decl. ¶ 3.)  Thus, any general-jurisdiction arguments would fail.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 & n.20 (2014) (explaining that absent exceptional circumstances, general jurisdiction over corporations is limited to an entity's state of incorporation or its principal place of business); *Goldstein v. Johnson & Johnson*, 2019 WL 289290, at \*2 (S.D. Fla. Jan. 21, 2019) (limiting general jurisdiction to a company's state of incorporation and principal place of business).

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

may then respond with affidavits negating those facts.  *Id.*; *see also Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1334 (S.D. Fla. 2016).  The burden then shifts back to the plaintiff, who is required to substantiate its jurisdictional allegations by competent proof.  *United Credit Recovery, LLC v. Bexten*, 2012 WL 750299, at *4 (M.D. Fla. Mar. 7, 2012).

      1.      <u>Because it is a mere holding company, Monster Beverage is not subject to personal jurisdiction</u>

Monster Beverage Corporation ("Monster Beverage") is a holding company.  In that capacity, Monster Beverage owns all the outstanding membership units of its subsidiaries, including the membership units of Monster Energy Company.  (Sacks Decl. ¶ 7.)

Equally important is what Monster Beverage does *not* do.  Monster Beverage does not sell, market, or promote beverage products.  (Sacks Decl. ¶ 8.)  That work—broadly speaking, the activity the public associates with the Monster brand—is carried out by Monster *Energy* Company.  (*Id.*)  VPX recognizes this distinction between the Monster entities.  VPX pleads that Monster *Energy* "markets, distributes, and sells energy drink beverages under numerous brands, including its flagship energy drink 'Monster Energy,' and competes with Bang Energy in the beverage industry, which includes energy drinks, ready-to-drink dietary drinks, and sports drinks." (Compl. ¶ 28.)  VPX makes no such allegations against Monster Beverage.  (*Id.* ¶ 27.)

It is well-settled that holding companies like Monster Beverage are not subject to jurisdiction in foreign courts.  Attempts to hale out-of-state holding companies into Florida court fail both parts of Florida's two-part test.  *First,* holding companies do not fall within the scope of Florida's long arm statute because merely owning the stock of a subsidiary does not satisfy any of the enumerated grounds for jurisdiction, such as "[c]omitting a tortious act" in the state or "[c]ausing injury to persons" there.  *See* Fla. Stat.§ 48.193; *see also Worthen by & through Worthen v. Cracker Barrel Old Country Store, Inc.*, 2005 WL 8159727, at *2 (M.D. Fla. Dec. 27, 2005) (finding that holding company was not subject to jurisdiction under Florida's long-arm statute).  *Second*, holding companies cannot be constitutionally haled into foreign courts, since the limited act of holding stock does not show that the holding company purposefully availed itself of the forum.  *See Goldstein v. Johnson & Johnson*, 2019 WL 289290, at *2 (S.D. Fla. Jan. 21, 2019) (finding that even if plaintiff had satisfied Florida's long-arm statute, "exercising jurisdiction over [a holding company] would violate the due process clause of the Fourteenth Amendment [because it had not] purposefully availed itself of the benefit of Florida laws").

*Goldstein* illustrates these principles.  In that case, the plaintiff sued Johnson & Johnson and its subsidiary over injuries he suffered from taking a Johnson & Johnson-branded pharmaceutical drug.  *Id.* at *2.  Johnson & Johnson moved to dismiss for lack of personal jurisdiction, arguing that it was a "holding company for J&J subsidiaries" that does not itself "design, manufacture, market, or distribute" products.  *Id* at *1.  The court agreed.  Since Johnson & Johnson was a "mere holding company" that did not itself design, manufacture, or distribute the drug at issue in the case, the court "found no basis to assert specific jurisdiction."  *Id.* at *3.[16]

The same is true here.  Monster Beverage does not have property, offices, or customers in Florida, nor does it manufacture or promote the Monster-branded energy drinks that make their way into this forum.  (Sacks Decl. ¶ 8.)  As relevant to this motion, all Monster Beverage does is hold stock, which is facially insufficient for jurisdictional purposes.  *Johnson & Johnson*, 2019 WL 289290, at *2; *Lee-Bolton*, 2013 WL 11522040, at *6; *Air Turbine Tech*, 235 F. Supp. 2d at 1290.

VPX appears to believe that the forum-specific conduct of Monster Beverage's subsidiaries—like Monster Energy—are imputed to Monster Beverage as their parent.  (Compl. ¶ 27 (alleging that Monster Beverage and its subsidiaries are a "collective entity").)  VPX's contention is rejected by caselaw.  "It is well settled in Florida that the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction."  *Enic, PLC v. F.F. S. & Co.*, 870 So. 2d 888, 891 (Fla. 5th DCA 2004).  This rule recognizes, implements, and safeguards Florida's strong presumption of corporate separateness.  *Id.*  A plaintiff's burden to overcome this presumption is significant:  It must show that the entities' "separate corporate status is a mere formality" such that the parent and subsidiary have "no true

---

[16] Courts consistently reach this same conclusion.  In *Air Turbine Tech., Inc. v. Atlas Copco AB*, 235 F. Supp. 2d 1287, 1290 (S.D. Fla. 2002), for example, the holding-company defendant held the stock of numerous subsidiaries, but did not itself "manufacture, distribute, market or sell product," making it unamenable to jurisdiction.  *See also Lee-Bolton v. Koppers Inc.*, 2013 WL 11522040, at *6 (N.D. Fla. Sept. 9, 2013) (dismissing company for lack of personal jurisdiction because it was "not operating [its subsidiary] or any business; it is a stock holding company"); *MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1359 (S.D. Fla. 2000) (dismissing holding company for lack of personal jurisdiction).

(Continued...)

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

individual entity." *Lee-Bolton*, 2013 WL 11522040, at *4.[17]

VPX has not pleaded facts to meet this high burden.  While VPX asserts that each defendant was an alter ego and agent of all other defendants (Compl. ¶ 48), those allegations are legal conclusions that are given no weight.  *See e.g.*, *N. Am. Clearing, Inc. v. Brokerage Compt. Sys., Inc.*, 2009 WL 1513389, at *9 (M.D. Fla. May 27, 2009) (disregarding alter-ego allegations as "legal conclusions[] couched as factual allegations" where plaintiff did not include "facts concerning how [the defendant misused] the corporate form").  And VPX's only allegation that arguably is directed at meeting this standard—that "Monster Beverage Corporation . . . refers to itself and its subsidiaries as a collective entity" in SEC filings (Compl. ¶ 27)—has been expressly rejected by courts.  *See Lee-Bolton*, 2013 WL 11522040, at *6 (explaining that "referring to the parent and subsidiary collectively as one company in shareholder and SEC reports does not establish requisite control"); *Dev. Corp. of Palm Beach v. WBC Const., L.L.C.*, 925 So. 2d 1156, 1160 (Fla. 4th DCA 2006) (holding that SEC filing that referred to companies as "integrated" and "consolidated" was insufficient; such filings do not define the parties' "legal relationship").

But even if VPX had pleaded such facts, Monster Beverage's affidavit is sufficient to rebut VPX's allegations.  *See, e.g.*, *MeterLogic*, 126 F. Supp. 2d at 1358 (finding that defendant's declarations had "refut[ed]" plaintiff's alter-ego and agency allegations).  Monster Beverage's affidavit shows:

- Monster Beverage conducts business in its own name. (Sacks Decl. ¶ 16.)
- Monster Beverage maintains separate books, records, and corporate minutes from those of its subsidiaries.  (*Id.* ¶ 13.)
- Monster Beverage keeps separate bank accounts.  (*Id.*.)

In short, Monster Beverage respects corporate formalities and therefore is not responsible for the actions of its subsidiaries.  *See, e.g.*, *MeterLogic*, 126 F. Supp. 2d at 1358 (parent company not subject to personal jurisdiction where parent and subsidiary "maintain separate bank accounts and . . . transact business in their own name").

---

[17] Whether proceeding under an "agency" theory or an "alter ego" theory, VPX must show that Monster Beverage pervasively controls its subsidiaries before those subsidiaries' conduct can be attributed to Monster Beverage.  *See Lee-Bolton*, 2013 WL 11522040, at *5 (explaining that under an agency theory, a plaintiff must show "day-to-day operational control by a parent corporation over the subsidiary"); *MeterLogic*, 126 F. Supp. 2d at 1358 (explaining that under the alter-ego theory, a plaintiff must show that "the subsidiary is a mere instrumentality of the parent").

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

2.      Energy Beverages did not subject itself to jurisdiction by registering a website domain name

Energy Beverages is a subsidiary of Monster Beverage.  In general, Energy Beverages is an intellectual-property holding company.  (Sacks Decl. ¶ 4.)  In this case, Energy Beverages is alleged to be "the registrant for the domain name called thetruthaboutbang.com," a website on which VPX alleges Monster made false and misleading statements.  (Compl. ¶ 31.)  But that single act—registering a website—does not provide a basis for personal jurisdiction under either Florida's long-arm statute or the Constitution.

*First*, Energy Beverages' registration of a website does not satisfy the criteria of Florida's long-arm statute.  For starters, "[t]he mere fact that [a defendant] owns . . . a website . . . does not satisfy the requirement that defendant must be 'carrying on business' in Florida for the purposes of § 48.193(1)(a)."  *DeZinno v. McClain Printing Co.*, 2007 WL 9709709, at *7 (S.D. Fla. Apr. 19, 2007).  This is especially so when—as here with Energy Beverages—the website owner does not have a license to do business in Florida or have property, offices, or customers there.  (Sacks Decl. ¶¶ 10-12; *Horizon Aggressive Growth, LP. v. Rothstein–Kass, PA*, 421 F.3d 1162, 1167 (11th Cir. 2005) (explaining that the relevant factors for determining if a defendant is "carrying on business" in Florida "include[s] the presence and operation of an office in Florida [] the possession and maintenance of a license to do business in Florida [], the number of Florida clients served [], and the percentage of overall revenue gleaned from Florida clients").)

Nor does the fact that the truthaboutbang.com website was allegedly used to "direct[] defamatory electronic communications into Florida" provide grounds for jurisdiction under Florida's long-arm statute.  (Compl. ¶ 53.)  It is true that a defendant that *posts* defamatory statements accessed in Florida about a Florida resident can, under certain circumstances, satisfy the Florida long-arm statute.  *See Santilli v. van Erp*, 2018 WL 3956309, at *3 (M.D. Fla. Aug. 17, 2018).  But Energy Beverages didn't post anything; it merely registered the domain name. (Sacks Decl. ¶ 18.)  As Florida courts recognize, owning a domain is jurisdictionally different from posting allegedly defamatory material on that domain.  *See Two Worlds United v. Zylstra*, 46 So. 3d 1175, 1178 (Fla. 2d DCA 2010) (finding no jurisdiction where the nonresident filed a declaration denying "personally making any posts on the website relating to [the plaintiff]"); *Santilli*, 2018 WL 3956309, at *3 (finding no personal jurisdiction where the defendant declared

that he "neither . . .wrote for or contributed to" the website in question).[18]

*Second*, even if VPX had satisfied Florida's long-arm statute, Energy Beverages would prevail on constitutional grounds.  In *Goforit Entertainment LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1331 (M.D. Fla. 2007), for example, the court held that it would violate the Due Process Clause to subject a website registrant to personal jurisdiction in Florida.  It explained "the fact that Internet users can access a site [in a geographic area] is not constitutionally sufficient to subject the site registrant to that geographic area; such a holding would fly in the face of traditional jurisdictional principles."  *Id.* at 1330.  Thus, "even assuming" that the long-arm statute was satisfied, the mere "registration of . . . site names [was not] a contact with the state of such that the moving Defendants should [have] reasonably anticipate[d] being haled into court in Florida."  *Id.* at 1331.

### III.    CONCLUSION

For the reasons stated above, Monster respectfully requests that VPX's complaint be dismissed.

Dated: November 8, 2019

By:  **s/  John C. Hueston**
John C. Hueston, Esq. (*admitted pro hac vice*)
Email:  jhueston@hueston.com
Moez Kaba, Esq. (*admitted pro hac vice*)
Email:  mkaba@hueston.com
Steven N. Feldman, Esq. (*admitted pro hac vice*)
Email:  sfeldman@hueston.com
Sourabh Mishra, Esq. (*admitted pro hac vice*)
Email:  smishra@hueston.com
**HUESTON HENNIGAN, LLP**
523 West 6th St., Suite 400
Los Angeles, CA  90014
Telephone:  213.788.4340

---

[18] If the law were otherwise—*i.e.*, allowing for website registrant to be haled into court any time a defamatory message was posted on its website—then website owners like Facebook and Twitter would be subject to jurisdiction in any state where a user is allegedly defamed.  But as other courts in this Circuit have recognized, that is not the law.  *Harrison v. Facebook, Inc.*, 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019), *report and recommendation adopted,*  2019 WL 1102210 (S.D. Ala. Mar. 8, 2019) ("This Court agrees with other courts that have held that personal jurisdiction over Facebook may not exist simply because a user avails herself of Facebook's services in a state other than the states in which Facebook is incorporated and has its principal place of business." (alterations omitted).)

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS

*Attorneys for Defendants, Monster Beverage Corporation; Monster Energy Company; Reign Beverage Company, LLC; and, Energy Beverages LLC*

By: **s/ Brian J. Stack**
Brian J. Stack, Esq.
Fla. Bar No. 0476234
Email:  bstack@stackfernandez.com
        mwolf@stackfernandez.com
Robert Harris, Esq.
Fla. Bar No. 817783
Email:  rharris@stackfernandez.com
        gmartich@stackfernandez.com
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Telephone: 305.371.0001

*Attorneys for Defendants, Monster Beverage Corporation; Monster Energy Company; Reign Beverage Company, LLC; and, Energy Beverages LLC*

MONSTER DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT
AND MOTION TO DISMISS