# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-61974-CIV-ALTONAGA/Stevens

VITAL PHARMACEUTICALS, INC.,
d/b/a BANG ENERGY, a Florida corporation,

      Plaintiff,

v.

MONSTER BEVERAGE CORPORATION, a
Delaware corporation, MONSTER ENERGY
COMPANY, a Delaware corporation, REIGN
BEVERAGE COMPANY, LLC, a Delaware
limited liability company, ENERGY
BEVERAGES, LLC, a Delaware corporation,
MARKERLY, INC., a California corporation,
JENNIFER QUILLEN, an individual, BRETT
MARTIN, an individual, CHRISTIN
KUBSCH, an individual, CRYSTAL
BOWLEY-REAGAN, an individual,
SUMMER SHORES, an individual, AMBER
N. KILLMON, an individual, AMANDA
LIGHT, an individual, CRYSTAL CARDER,
an individual, LAURA DAWSON, an
individual, ARIANNA JONAE HENDERSON,
an individual, and KRISTIN WONG, an
individual,

      Defendants.

_____/

## FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Vital Pharmaceuticals, Inc., d/b/a Bang Energy ("Bang Energy" or "Plaintiff"),

hereby sues Defendants Monster Beverage Corporation ("Monster Beverage"), Monster Energy

Company, Reign Beverage Company, LLC ("Reign Beverage"), and Energy Beverages, LLC

("Energy Beverages") (collectively "Monster" or the "Monster Defendants"), Markerly, Inc.

("Markerly"), Jennifer Quillen ("Quillen"), Brett Martin ("Martin"), Christin Kubsch ("Kubsch"),

Crystal Bowley-Reagan ("Bowley-Reagan"), Summer Shores ("Shores"), Amber N. Killmon ("Killmon"), Amanda Light ("Light"), Crystal Carder ("Carder"), Arianna Jonae Henderson ("Henderson"), and Kristin Wong ("Wong"), and states:

## INTRODUCTION

1.     The following is based on information and belief, as well as information gathered by government documents, public records, and other investigation.

2.     Monster has failed to disclose to the general public and its investors the extreme risk of heart attack and death associated with the consumption of its flagship high sugar, high carbohydrate "Monster Energy" energy drink product, depicted here:



It is believed that documents will show a conspiracy by the company and its highest officials, despite knowing of the dangers of their products to consumers, to suppress, obstruct, and conceal these dangers.

3.     Though Monster deceptively calls its flagship product "Monster Energy" and spends millions in advertising to market it as an energy booster, using taglines such as "unleash the beast" and associating its products with extreme sporting events and edgy personalities, Monster's flagship product is not an "energy" drink at all. Recent studies have shown that these products have *zero* positive effect on energy and mood. Instead, consumers experience a sugar crash, with

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

reduced alertness and higher levels of fatigue.  Further, due to the toxic combination of ingredients in Monster Energy, there have been numerous reports to the U.S. Food and Drug Administration ("FDA") about adverse health events associated with these products, including heart attacks and at least 18 deaths.  Monster has quietly and confidentially settled numerous lawsuits related to these health events to avoid unwanted media attention about the dangers of its products, including:

- Dustin Hood, a healthy 19-year old boy from Georgia who consumed Monster energy drinks and then suffered a fatal cardiac arrest while playing basketball, landing face-first on the cement (settled before trial, amount unknown);

- Anais Fournier, a healthy 14-year old honor student from Maryland who suffered a fatal cardiac arrest while she was relaxing at home after consuming Monster energy drinks (settled before trial, amount unknown);

- Alex Morris, a healthy 19-year old boy from Maryland who suffered a fatal cardiac arrest while having sex with his girlfriend after consuming Monster energy drinks (settled before trial, amount unknown); and

- Shane Felts, a healthy 42-year old man in Missouri who suffered a fatal heart attack at home after consuming Monster energy drinks (settled before trial, amount unknown).

4.      Monster's false representations that its flagship product is an "energy" drink and its related failure to warn consumers of the sugar crash and other potential negative health consequences of drinking the company's products, through warning labels on its cans or otherwise, has permitted Monster to achieve billions in dollars in sales at the expense of public health and honest competitors like Bang Energy.

5.      In addition to the bad publicity from the hundreds of health incidents and lawsuits related to Monster's flagship, sugar-based products, Monster has wholly failed to keep up with shifting consumer trends toward healthier, fitness-oriented beverages.  Sales of Monster's flagship product are on the decline and it can no longer be relied upon to sustain the Monster brand, and Monster knows it.

6.     In the meantime, Bang Energy's BANG® products have rapidly captured an increasing share of the energy drink market because, unlike Monster's flagship product, BANG® energy drinks deliver a safe, sugar-free, crash-free, great tasting energy drink experience.  Caught off guard and apparently without the time or ability to fairly compete head-to-head with Bang Energy's BANG® products, Monster resorted to unscrupulous, anti-competitive practices in an attempt to force Bang Energy out of the market, first, by creating a shameless knockoff (called Reign) of Bang Energy's wildly successful BANG® energy drink and, then, by carefully choreographing the knockoff's launch with a widespread smear campaign against Bang Energy, its CEO John ("Jack") H. Owoc, and its BANG® products, including:

    a.  Filing a motion for preliminary injunction in The Netherlands in a failed attempt to ban the marketing and sale of BANG® products in Europe and worldwide, alleging meritless claims of false advertising (denied on May 9, 2019, with the court finding Monster to be the "losing" party, and ordering Monster to pay Bang Energy and Jack Owoc's attorneys' fees and legal costs);

    b.  Filing a motion for preliminary injunction in California in a failed attempt to force a recall of hundreds of millions of cans of BANG® and halt future sales in the U.S., alleging meritless claims of false advertising (denied in its entirety on June 17, 2019);

    c.  Creating, behind closed doors in an attempt to deceive the public, the sham website called "**THE TRUTH ABOUT BANG**" **located at www.thetruthaboutbang.com** (the "TAB website" and the "TAB domain," respectively) containing false and misleading information about Bang Energy, its CEO, and BANG® energy drinks;

    d.  Hiring social media influencers (also named as defendants herein) to spread the misinformation derived from Monster's TAB website;

    e.  Developing the #fbang initiative that directs and incentivizes Monster employees and agents to interfere with Bang Energy's retail sales by placing false advertising cards in coolers and on store shelves that make false claims about BANG®, its CEO, and BANG® products, warns customers not to buy BANG® products, makes false comparisons between Reign energy drinks and BANG® energy drinks and further directs and incentivizes Monster employees and agents to remove BANG® products and marketing materials from store shelves and replace it with Reign; and

    f.  Instructing the Hueston Hennigan law firm to interfere with Bang Energy's business by mailing threatening letters to Bang Energy's distributors and retailers that enclose Monster's own meritless complaint in the California action, which

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

parrots the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks.

7.     Defendants' misconduct gives rise to at least eight (8) causes of action: (i) False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a); (ii) Copyright Infringement in Violation of the Copyright Act , 17 U.S.C. § 411; (iii) Unfair Competition in Violation of Florida Common Law; (iv) Violation of the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, *et seq.*, Florida Statutes ("FDUPTA"); (v) Trade Libel; (vi) Tortious Interference with Advantageous Business Relationships; (vii) Tortious Interference with Prospective Business Relationships; and (vii) Civil Conspiracy.

## SUMMARY OF KEY EVENTS

8.     On or around March 29, 2019, Monster launched a zero-calorie, zero sugar, caffeinated beverage called "Reign," an unimaginative knockoff of Bang Energy's BANG® energy drinks that flagrantly infringes on Bang Energy's intellectual property.

9.     Simultaneous with the launch of the Reign product, Monster set into motion a malicious and widespread smear campaign against Bang Energy, its CEO, and BANG® energy drinks, which was subsequently and covertly joined by Defendants Markerly and a number of on-line "influencers" recruited by Markerly.

10.     In or around mid-to-late March, Monster created the TAB website for the sole and exclusive reason of spreading falsehoods and misinformation about Bang Energy, its CEO, and BANG® energy drinks.  The TAB website relied on re-posted, doctored, and mischaracterized videos and images properly registered to Bang Energy, in violation of Bang Energy's U.S. copyrights, in an attempt to procure a commercial advantage by defrauding, deceiving, and confusing the public.

11.     Thereafter, posts from Monster's paid influencers defaming Bang Energy began to

appear on their websites and social media accounts.  The posts rely almost exclusively on content from and links to the TAB website, fail to disclose any connection to Monster, and include a sham FDA call to action.  Shortly thereafter, The Wall Street Journal noted that "Monster has raised concerns about Bang's health claims with the Food and Drug Administration."[1]

12.     Monster, upon information and belief, engaged Defendant Markerly to orchestrate a furtive disinformation campaign against Bang Energy, its CEO, and it BANG® energy drinks. Markerly promotes itself as an "influencer marketing solution" that uses "technology" and "sheer brute force" "to recruit "influencers."[2]  In addition, Justin Kline, the Markerly CEO, claims Markerly reaches "over 1B people across all social platforms" (emphasis added).[3]

13.     Monster's directive to these influencers is clear: disseminate falsehoods about Bang Energy based on the TAB website and see if you can trump up an FDA investigation.

14.     Critically, neither Markerly nor the influencers disclose to the consuming public that they have a connection with Monster; this is deliberately deceptive and runs afoul of Guidelines for endorsees and influencers promulgated by the Federal Trade Commission.[4] Additionally, by misleading the consuming public in this manner, Monster and Markerly have

---

[1] See Jennifer Maloney, *Energy-Drink Upstarts Are Sapping Monster's Strength*, The Wall Street Journal, April 17, 2019, https://www.wsj.com/articles/energy-drink-upstarts-are-sapping-monsters-strength-11555498800 (last visited August 6, 2019).

[2] See http://markerly.com/blog/instagram-marketing-does-influencer-size-matter/ (last visit August 6, 2019).

[3] See Justin Kline's LinkedIn page, https://www.linkedin.com/in/klinejustin/ (last visited August 6, 2019).

[4] See Federal Trade Commission, The FTC's Endorsement Guides: What People Are Asking, https://www.ftc.gov/tips-advice/business-center/guidance/ftcs-endorsement-guides-what-people-are-asking (last visited August 6, 2019).

potentially engaged in actionable violations of Section 5(a) of the Federal Trade Commission Act.[5]

15.     The utilization of the influencers and bloggers, who appear to have no discernible experience, training, or education on the subject matters for which they purport to opine, illustrates the lengths Monster has gone, and will continue to go, to effectuate its smear campaign for the purposes of promoting Monster's own products, disparaging Bang Energy and its CEO, stymying the meteoric rise of BANG®, which has wrested away a substantial portion of the energy drink market, and confusing consumers.

16.     Monster resorted to utilizing influencers to spread disinformation regarding Bang Energy, its CEO, and BANG® energy drinks to distance itself from the smear campaign it pilots in the background.  Upon information and belief, Monster paid Markerly, and then Monster paid, through Markerly, the influencers to massively and immediately widen the audience for Monster's contrived false expressions that impugn the honesty, credibility, and business operations of Bang Energy and its CEO.  Following Monster's unscrupulous lead, the Influencer Defendants also attack the quality of the products sold by Bang Energy, intending to cause Bang Energy pecuniary injury and further defraud, deceive, and confuse the public.

17.     That Monster is orchestrating the Influencer Defendants' multi-front attack on Bang Energy is made clear from their uniform reference to the TAB website and the claims made therein.

18.     Monster has even developed an initiative called "#fbang" with the slogan "Fuck Bang, make it Reign" that directs Monster employees and agents to systematically place false advertising cards on retail store shelves and in coolers across the country that reference Monster's TAB website and parrot the TAB's false, misleading, and defamatory claims about Bang Energy,

---

[5] *See* 15 U.S.C § 45(a)(1).

its CEO, and BANG® energy drinks along with cards that conspicuously display the Reign name and logo and make false head-to-head comparisons between BANG® and Monster's knockoff of BANG®, Reign.  These cards are placed in front of and near BANG® products to deter consumers from purchasing BANG® product.

19.     Even more, Monster directs its employees and agents, including without limitation the Florida Coke bottler and distribution, to systematically remove BANG® product from store shelves and cooler space, remove BANG® displays, signs, and other marketing materials from stores, replace BANG® products with Reign products on store shelves and cooler space, and turn cans of BANG® around or block BANG® product from view such that the BANG® name and logo are no longer visible to consumers, thereby increasing sales of Reign at the expense of Bang Energy and confused consumers.

20.     In further tortious interference with Bang Energy's business and sales of BANG® products, and coinciding with Monster's launch of Reign, the TAB website, and Monster's #fbang initiative , Monster's legal counsel sent letters to Bang Energy's distributors of BANG® products across the country, such as Europa Sports Products, ironically threatening legal action if *they* interfere with Monster's products and shelf space allocations.  No evidence exists, nor is any cited in these letters, that these distributors have in any way interfered with Monster's products or shelf space allocations, much less that Bang Energy directed them to do so.  Therefore, the sole purpose of Monster's letters to Bang Energy's business partners is to interfere with Bang Energy's business and its business relationships with the expectation of disrupting the distribution and sales of BANG® products and to act as a subterfuge for Monster's #fbang initiative, the TAB false advertising online and in stores, and other acts of interference with Bang Energy's goodwill, reputation, and sales.

21.     And to further interfere with Bang Energy's business relationships and sales, Monster's counsel is also sending letters to retailers such as GNC and The Vitamin Shoppe, which are Bang Energy's largest customers, advising of Monster's litigation against Bang Energy, with the express purposes of intimidating these retailers into discontinuing sales of Bang Energy's products.

22.     Taken together, Monster's wide-ranging and multi-faceted smear campaign against Bang Energy, planned and carefully timed to coincide with the launch of its knock-off product, Reign, includes:

    a.  Monster creates the TAB domain and the TAB website disparaging Bang Energy and its hugely successful BANG® energy drink products;

    b.  Monster launches Reign, its BANG® knockoff that shamelessly infringes on the distinctive trade dress of BANG® energy drinks and the REIGN® trademark, for which Bang Energy is the exclusive licensee;

    c.  Monster pays "influencers" to repeat its false and misleading TAB statements that disparage Bang Energy, its CEO, and BANG® products on their websites and social media accounts;

    d.  Monster develops and executes its #fbang initiative and directs employees and agents, including Coke distributors, to "take down" Bang Energy by systematically and illegally removing BANG® products from store shelves, removing BANG® displays and marketing materials, replacing BANG® with Reign product on store shelves, hiding BANG® product in stores and placing advertising cards in front of BANG® products in stores that contain false and misleading statements about Bang Energy, its CEO, and BANG® products, direct consumers to the TAB website, instruct customers not to buy BANG® products, and make false head-to-head comparisons between BANG® and Reign products;

    e.  Monster causes threatening letters to be sent to Bang Energy distributors across the country, such as Europa Sports Products, ironically warning them not to interfere with Monster's products and shelf space allocations; and

    f.  Monster causes threatening letters to be sent to retailers of BANG® products across the county, such as GNC and The Vitamin Shoppe, to advertise its meritless lawsuit against Bang Energy, all with the express purpose of disrupting Bang Energy's business dealings and related sales of BANG® across the country.

    g.  Monster conspires with

23.     As of June 3, 2019, or thereabouts, the TAB website was no longer accessible, and

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

it is unknown when Monster will chose to reactivate it.[6]  Bang Energy is entitled to damages for the harm Monster caused to Bang Energy via the TAB website, the #fbang initiative, and related misconduct and seeks injunctive relief (a) to prohibit Monster and Markerly from using the TAB domain and reactivating the TAB website, (b) for the removal of links or references to the TAB website from the pages created by the Influencer Defendants, and (c) to prohibit the Influencer Defendants from publishing links or references to the TAB website in the future.

24.     Bang Energy also seeks damages related to the various acts of interference with sales of BANG® products by Monster and its affiliates across the country, including the placement of the TAB cards on store shelves, other acts of interference related to the display of BANG® products at retail stores, and the mailing of threatening letters to Bang Energy's distributors and retailers, and seeks injunctive relief (a) for the removal of all advertising cards placed by Monster or its affiliates that refer to Bang Energy, its CEO, TAB, or BANG® cards from store and cooler shelves, (b) prohibiting Monster and its affiliates from these and other above-described acts of interference with sales of BANG® products at retail locations, and (c) prohibiting Monster from sending threatening letters to Bang Energy's distributors and retailers.

## THE PARTIES

25.     Bang Energy is a Florida corporation with its principal place of business in Weston, Florida.

26.     Monster Beverage is a Delaware corporation with its principal place of business in Corona, California that conducts business in Florida, including the Southern District of Florida,

---

[6] The TAB website can nonetheless be accessed via Internet Archive Wayback Machine: https://web.archive.org/web/20190404140453/https://www.thetruthaboutbang.com/ (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

and has employees and agents who reside or may be found in this District.  Monster Beverage is a

publicly traded corporation that refers to itself and its subsidiaries as a collective entity.  *See e.g.,*

**Exhibit A**.  Monster Beverage admits that it conducts operating business through its wholly owned

subsidiaries, which include Monster Energy, Energy Beverages, and Reign Beverage.[7]  Monster

Beverage labels, markets, distributes, sells, and derives its revenue from energy drink beverages

sold under numerous brands, including its flagship energy drink "Monster Energy."  Monster

Beverage does business as and through Monster Energy Company and is a "dba" of Monster

Energy Company.[8]  Monster Beverage likewise markets and derives revenue from the Reign brand

of energy drinks.[9]  Monster Beverage competes with Bang Energy in the beverage industry, which

includes energy drinks, ready-to-drink dietary drinks, and sports drinks.

27.     Monster Energy Company is a Delaware corporation with its principal place of

business in Corona, California that is a subsidiary of Monster Beverage.   Monster Energy

---

[7] *See e.g., Monster Beverage Corporation and Monster Energy Company v. Dennis Herrera, in his official capacity as City Attorney of San Francisco*, C.D. Cal., Case No. 5:13-cv-00786-VAP-OP, Dkt. No. 1, ¶ 11 ("Monster Beverage is a holding company that conducts no operating business ***except through its wholly-owned subsidiaries***") (emphasis added).

[8] *See e.g., Monster Energy Company, f/k/a Hasen Beverage Company, d/b/a Monster Beverage Company*, United States District Court, M.D. Fla, Case No. 6:11-cv-00329-ACC-DAB, Dkt. No. 130, ¶ 5 ("Plaintiff Monster Energy Company, formerly known as Hansen Beverage Company d/b/a Monster Beverage Company"); *Monster Beverage Corp., et al.*, C.D. Cal., Case No. 5:13-cv-00786-VAP-OP, Dkt. No. 1, ¶ 1 (admitting that both entities control, label, market, and sell Monster Energy® brand energy drinks and complaining that the City Attorney decided "that ***Plaintiffs'*** energy drinks are unhealthful" and that he "threatened to seek an order enjoining ***Plaintiffs*** from selling ***their*** energy drinks as currently formulated; severely restricting what ***Plaintiffs*** can say on ***their*** product labels, in marketing materials, and elsewhere; and prescribing the manner in which ***Plaintiffs*** can market and sell ***their*** energy drinks and to whom those products may be marketed and sold."); https://en.wikipedia.org/wiki/Monster_Beverage ["Monster Beverage Corporation is an American beverage company that manufactures energy drinks including Monster Energy"]).

[9] *See e.g., Vital Pharmaceuticals, Inc. v. Monster Energy Company*, Case No. 0:19-cv-60800-RKA, S.D. Fla, Dkt. 27 (Monster's Counterclaim, ¶ 27 ("In January 2019, Monster Beverage Corporation announced a new line of beverages called REIGN.").

Company, along with Monster Beverage, labels, markets, distributes, and sells energy drink beverages including Monster Beverage's flagship energy drink "Monster Energy," and likewise competes with Bang Energy in the beverage industry. Monster Energy's revenue accounts for the vast majority of Monster Beverage's business. Monster Energy's location and executives are the same as Monster Beverage. Monster Energy Company conducts business in Florida, including in the Southern District of Florida, and has employees and agents who reside or may be found in this District.

28.     Reign Beverage is a Delaware limited liability company with its principal place of business in Los Angeles, California that is a subsidiary of Monster Beverage. Reign Beverage conducts business in Florida, including in the Southern District of Florida, and has employees and agents who reside or may be found in this District. Reign Beverage labels, markets, distributes, and sells an energy drink called "Reign" that was specifically created by Monster Beverage, Monster Energy, and Reign Beverage to copy and replace BANG® energy drinks and compete directly with Bang Energy in the fitness-oriented energy drink space. Monster Energy Company acts as Reign Beverage's sole member, and the two companies have common control, ownership, employees, and agents. Monster Energy Company fully supports and controls Reign Beverage for all purposes relevant to the claims in this action.

29.     Energy Beverages is a Delaware corporation located in Corona, California that is a subsidiary of Monster Beverage. Energy Beverages is the registrant for the thetruthaboutbang.com (the "Domain"), providing contact information for Energy Beverages at Monster's address and phone number. Energy Beverages directs e-mails about the Domain to its e-mail, dnsadmin@energybeveragesllc.com. *See* **Exhibit B**. Energy Beverages' public website lists the Monster-related companies as affiliates. *See* **Exhibit C.** Energy Beverages is an owner, creator,

and content provider for the TAB Domain and the TAB website.  *See* **Exhibit D**.

30.     Markerly is a Delaware corporation with its principal place of business in Austin, Texas.  Markerly was engaged and paid by Monster Beverage and Monster Energy to solicit and compensate influencers, bloggers, and other social media users to participate in the conspiratorial widespread smear campaign against Bang Energy.

31.     Defendant Quillen is a 41-year-old influencer/blogger who resides in Tampa, FL 33634-5187.  *See* **Exhibit E**.

32.     Defendant Martin is a 44-year-old influencer/blogger who resides in Bolton, CT 06043-7843.  *See* **Exhibit F**.

33.     Defendant Kubsch is a 26-year-old influencer/blogger who resides in Indianapolis, IN 46256-4332.  *See* **Exhibit G**.

34.     Defendant Bowley-Reagan is a 37-year-old influencer/blogger who resides in Conroe, TX 77301-4138.  *See* **Exhibit H**.

35.     Defendant Shores is a 23-year-old influencer/blogger who resides in York, PA 17402-8695.  *See* **Exhibit I**.

36.     Defendant Killmon is a 37-year-old influencer/blogger who resides in Road Gates, NC 27937-9839.  *See* **Exhibit J**.

37.     Defendant Light is a 36-year-old influencer/blogger who resides in Littleton, MA 01460-1402.  *See* **Exhibit K**.

38.     Defendant Carder is a 28-year-old influencer/blogger who resides in Grantsville, MD 21536-1147.  *See* **Exhibit L**.

39.     Defendant Henderson is a 20-year-old influencer/blogger who resides in North Hollywood, CA 91601-1891.  *See* **Exhibit M**.

40.     Defendant Wong is a 30-year-old influencer/blogger who resides in Los Angeles, CA 90015-2771.  *See* **Exhibit N**.

41.     Upon information and belief, at all times relevant to this action, each Defendant was either acting in his/her individual capacity or as an agent, affiliate, officer, director, manager, member, principal, alter-ego, or employee of a defendant corporation and, in such circumstances, was at all times acting within the scope of such agency, affiliation, alter-ego relationship, or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full knowledge of each and every violation of Bang Energy's rights and the damages to Bang Energy proximately caused by their wrongful actions.

## JURISDICTION AND VENUE

42.     This Court has subject matter jurisdiction because Bang Energy brings this action against Defendants for injunctive and other relief under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, particularly 15 U.S.C. § 1125(a), and the Copyright Act, 17 U.S.C. § 411.

43.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all other state law claims that are part of the same case or controversy.

44.     Personal jurisdiction over each Defendant is proper because each has operated, conducted, engaged in, or carried on a business venture in the State of Florida, and in the Southern District of Florida, and/or each conspired to commit intentional tortious acts, and did so commit intentional tortious acts, including without limitation defamation, trade libel, tortious interference with advantageous and prospective business relationships, copyright infringement, and civil conspiracy to commit same, within the State of Florida expressly aimed at residents of this state the effects of which were suffered by residents of this forum that each Defendant reasonably should have anticipated.

45.     The disparaging and defamatory statements on the TAB website and on the

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

pertinent blogs and social media accounts of the Influencer Defendants are electronic communications into Florida, for the purpose of injuring and did so injury Florida residents, that can be and have been accessed by third parties from within the State of Florida.

46.    Each Defendant's activity within the State and in the Southern District of Florida are substantial, and not isolated, within the meaning of Section 48.193(2), Florida Statutes.

47.    Venue is appropriate in this Court under 28 U.S.C. § 1391 because Defendants do business in the State of Florida and, in particular, within the geographic confines of the Southern District of Florida.

## **FACTUAL BACKGROUND**

### I.   HEALTH COMPLAINTS AND DEATHS ASSOCIATED WITH MONSTER'S FLAGSHIP PRODUCTS

48.    Monster's flagship energy drink brand (Monster Energy) is depicted below:




49.     Monster Energy drinks contain a dangerous mixture of ingredients, including caffeine, sugar, glucose, ginseng root extract, guarana seed extract, riboflavin (vitamin B2), glucuronolactone, carbonated water, l-carnitine, pyridoxine hydrochloride, cyanocobalamin (vitamin B12), niacinamide (vitamin B3), taurine, vitamin B6, and sodium.  Most notably, in addition to a very large amount of sugar (54 g) and 160 mg of caffeine, Monster Energy drinks contain ginseng root extract and guarana seed extract act, which both act as powerful stimulants, with guarana seed being twice as potent as coffee.

50.     The ingredients in Monster Energy drinks, when mixed together, create a harmful concoction that can threaten (and, in fact, have threatened) consumers with grievous, adverse health effects.  Numerous studies have shown that so-called "energy" drinks with sugar, like Monster's flagship product, cause only a sugar "crash" and do not supply any energy to the consumer.[10]  Studies of Monster's "energy drink" products have also established that consuming Monster's products does nothing at all to improve athletic performance, but instead may result in adverse health consequences.[11]

---

[10] *See*, *e.g.*, Konstantinos, et al., *Sugar rush or sugar crash?  A meta-analysis of carbohydrate effects on mood*, Neuroscience & Biobehavioral Reviews, Volume 101, Pages 45-67, (June 2019), https://www.sciencedirect.com/science/article/pii/S0149763418309175 (last visited August 6, 2019).

[11] *See* Michael T. Nelson, George R Biltz and Donald R Dengel, *Cardiovascular and ride time-to-exhaustion effects of an energy drink*, Journal of the International Society of Sports Nutrition, (2014), https://jissn.biomedcentral.com/track/pdf/10.1186/1550-2783-11-2 (last visited August 6, 2019).

Gabriel J Sanders, Willard Peveler, Brady Holmer and Corey A Peacock, *The effect of three different energy drinks on oxygen consumption and perceived exertion during treadmill exercise*, Journal of the International Society of Sports Nutrition (September 21, 2015), https://jissn.biomedcentral.com/articles/10.1186/1550-2783-12-S1-P1 (last visited August 6, 2019).

*Evaluation of Monster Energy® Drink Consumption on ECG and Hemodynamic Parameters in*

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

51.     According to information collected by the Center for Food Safety and Applied Nutrition (CFSAN), Office of Regulations and Policy, U.S. Food and Drug Administration (FDA), there are at least 102 reported adverse health events associated with Monster's products since 2004, including 18 deaths and 15 heart attacks.[12]  Numerous wrongful death lawsuits have been filed across the country related to the consumption of Monster Energy products, most of which Monster has quietly settled before trial for undisclosed amounts.

52.     Despite the known health consequences associated with the Monster Energy product, Monster has failed to provide adequate warnings on its cans to advise consumers about the risk of serious and potentially fatal health consequences related to the consumption of Monster Energy and its toxic mixture of ingredients.  Instead, Monster tries to minimize and disguise the true and dangerous amount of these ingredients by disingenuously splitting its 16-ounce can into two servings on its label.  *See e.g*. Image at Paragraph 56 above.  Monster also doggedly refuses to admit to the media, its shareholders, and the public that its Monster Energy flagship product is unsafe, despite overwhelming evidence to the contrary.

---

*Young Healthy Volunteers*, U.S. National Library of Medicine (December 30, 2013; Last Update Posted: August 11, 2016). https://clinicaltrials.gov/ct2/show/NCT02023723 (last visited August 6, 2019).

Fletcher E., *et al.*, *Randomized Controlled Trial of High-Volume Energy Drink Versus Caffeine Consumption on ECG and Hemodynamic Parameters*, J Am Heart Assoc. (April 26, 2017), https://www.ahajournals.org/doi/pdf/10.1161/JAHA.116.004448 (last visited August 6, 2019).

John P Higgins, Benjamin Yang, Nikki E. Herrin, Santi Yarlagadda, George T. Le, Brandon L. Ortiz, Asif Ali, and Stephen C. Infanger, *Consumption of energy beverage is associated with attenuation of arterial endothelial flow-mediated dilatation*, World Journal of Cardiology,162–166 (February 26, 2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5329743/ (last visited August 6, 2019).

[12] *See* https://www.fda.gov/Food/ComplianceEnforcement/ucm494015.htm (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

## II.   THE RISE OF BANG ENERGY'S BANG® PRODUCT LINE

53.   Bang Energy is a leading manufacturer, distributor, and seller of fitness-focused energy drinks and sports nutritional supplements in the United States and abroad.  Bang Energy was founded in 1993.

54.   Since its inception, Bang Energy has invested a significant amount of time, effort, and financial resources into developing, promoting, marketing, and advertising its products, which are among the best-selling energy drinks and sports nutrition products in the industry.  As part of Bang Energy's various marketing efforts, Bang Energy posts images and videos of its notable, brightly colored, eye-catching products on social media platforms such as Instagram and YouTube. Bang Energy also partners with other third parties to promote its products on social media platforms.

55.   Given the success of Bang Energy's marketing and the high quality of its products, Bang Energy has gained a considerable market share advantage over its competitors in the energy drink and sports nutrition segments.

56.   For well over a decade, from its headquarters in the Southern District of Florida, Bang Energy's products have been distributed and sold nationwide to a wide range of customers, including bottlers, full-service beverage distributors, retail grocery and specialty chains, wholesalers, club stores, mass merchandisers, convenience stores and foodservice customers, such as Publix, Albertsons, Kroger, Wal-Mart, Walgreens, and 7-Eleven, Europa Sports Products, and U.S. military bases, as well as gyms and leading retailers of sports-related supplements, vitamins, and other health, wellness, and fitness products, such as GNC and The Vitamin Shoppe, and via online retailers such as Amazon.com, bodybuilding.com, vitacost.com, and tigerfitness.com.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

### III.   THE ENERGY DRINK MARKET NOTICES THAT BANG® IS A COMPETITIVE PROBLEM FOR MONSTER

57.     While Monster promotes itself as the nationwide leader in the business of energy drinks and as the best-selling energy drink brand in the United States by unit volume, Bang Energy has gained significant market share in the energy drink sector over a relatively short period.  The market has taken notice of Bang Energy's rapid ascent and highlighted the possible negative impact on Monster.

58.     For example, on March 20, 2019, an article titled, "Monster Beverage Corp under threat from 'Juul of energy' Bang," opened by stating: "Fast-growing energy drink brand Bang is causing disruption to Monster Beverage Corp in the US as it takes market share."  The article was based on the opinions of a Wells Fargo analyst.[13]

59.     On April 3, 2019, the Executive Director of the Trade Journal Beverage Digest noted that Bang Energy "is clearly taking [market] share from Monster."[14]

60.     On April 16, 2019, Yahoo Finance published an article entitled: "Why Tiger Woods's Masters win will do nothing for Monster Beverage."  The title captured the article's theme that an endorsement by the internationally beloved Tiger Woods, on the heels of his epic victory just days before at The Masters, which had a reported viewership of over 18 million, would not help declining Monster's sales.  The article noted that, "according to several Wall Street firms," Monster is under "intense competition from upstart brands" and recognized that "[t]he most

---

[13] Andy Morton, *Monster Beverage Corp under threat from 'Juul of energy' Bang,* Just Drinks (March 20, 2019), https://www.just-drinks.com/news/monster-beverage-corp-under-threat-from-juul-of-energy-bang-analyst_id128047.aspx (last visited August 6, 2019).

[14] James, F. Peltz, *Monster energy drink maker expands lawsuit against rival Bang*, L.A. Times (April 3, 2019), https://www.latimes.com/business/la-fi-monster-energy-bang-lawsuit-20190403-story.html (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

prominent brand is Bang."[15]

61.     On April 17, 2019, the Wall Street Journal noted: "Monster Beverage Corp. is losing market share, fighting in court with an upstart competitor . . . called Bang Energy [who] has quickly captured about 9% of the market."[16]

62.     Rather than competing fairly with Bang Energy, Monster has resorted to malicious and deceitful tactics to confuse consumers and destroy Bang Energy's business, including its reputation, in an effort to retain Monster's diminishing market share in the energy drink space.

## IV.   MONSTER'S REPEATED WASTE OF JUDICIAL RESOURCES IN LAUNCHING MERITLESS LEGAL ATTACKS

### A.   Monster's Failed Lawsuits Against Bang Energy

63.     Monster has a history of resorting to duplicitous tactics aimed at damaging and disparaging Bang Energy and its founder and Chief Executive Officer, Jack Owoc.

64.     For example, in 2008, Monster's predecessor, Hansen Beverage Company, brought a meritless lawsuit against Bang Energy for alleged "false and misleading" statements regarding Bang Energy's REDLINE® brand of energy drinks in an action styled, *Hansen Beverage Company v. Vital Pharmaceutical, Inc.* [*sic*], Case No. 08-cv-01545 (S.D. Cal. filed Aug. 21, 2008).  The court denied Monster's motion for a preliminary injunction, and the lawsuit was eventually dismissed in Bang Energy's favor.  *Id.*  (Dkt. Nos. 33 and 217.)

65.     In September 2018, Monster brought an equally meritless lawsuit against Bang Energy for alleged "false and misleading" statements regarding Bang Energy's BANG® brand of

---

[15] *See* Brian Sozzi, *Why Tiger Woods's Masters win will do nothing for Monster Beverage*, Yahoo Finance (Apr. 16, 2009), https://finance.yahoo.com/news/why-tiger-woods-masters-win-will-do-nothing-for-monster-beverage-125451066.html (last visited August 6, 2019).

[16] *See* Jennifer Maloney, *Energy-Drink Upstarts Are Sapping Monster's Strength*, The Wall Street Journal (Apr. 17, 2019), https://www.wsj.com/articles/energy-drink-upstarts-are-sapping-monsters-strength-11555498800 (last visited August 6, 2019).

energy drinks in an action styled, *Monster Energy Company v. Vital Pharmaceuticals, Inc. and John H. Owoc*, Case No. 5:18-cv-1882 (C.D. Cal. filed Sept. 4, 2018).  This 2018 action is substantially similar to the failed action filed by Monster in 2008.  The Honorable Jesus G. Bernal has noted: "The 2008 Lawsuit and the present lawsuit . . . involve the <u>same parties</u>, the <u>same subject matter</u>, and the <u>same legal claims</u>.  In both lawsuits, Hansen/Monster's claims were and are largely grounded in allegations that Bang Energy made untruthful statements about its own energy drinks in order to boost its market position relative to that of Hansen/Monster."  (*Compare* "2008 Complaint," Case No. 08-cv-01545, Dkt. No. 15-4, *to* "2018 Complaint," Case No. 5:18-cv-1882, Dkt. No. 1; emphasis added.)

66.    And, as with the 2008 lawsuit, Monster sought to trigger action by the FDA and incite class action plaintiffs' attorneys to bring copycat suits against Bang Energy, as reflected in statements to the media by Monster's then lead attorney, Marc P. Miles of Shook Hardy & Bacon LLP ("Shook Hardy").  (Case No. 5:18-cv-1882, Dkt. No. 15 at ¶ 40 ("I imagine this lawsuit is just the tip of the iceberg for Bang.  I would not be surprised if the [U.S. Food and Drug Administration] took action or if there are consumer class action lawsuits for false advertising").)[17]

67.    Predictably, like moths to a flame, multiple copycat class actions cases were filed across the country, forcing Bang Energy to defend the same meritless claims on multiple fronts.

68.    Nonetheless, courts have predictably continued to reject Monster's attempts to litigate Bang Energy out of the market.  Leaving no stone unturned, Monster even took its scorched earth campaign against Bang Energy to the European Union.  On March 29, 2019, Monster filed an action in the District Court, Amsterdam, The Netherlands, seeking a worldwide ban of BANG®

---

[17] Tellingly, Marc P. Miles and Shook Hardy were promptly disqualified from the lawsuit on grounds that Miles defended Bang Energy against Monster in the 2008 lawsuit.  (Case No. 5:18-cv-1882, Dkt. No. 31).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

energy drinks.  Less than two months later, on May 23, 2019, the Dutch court resoundingly rejected Monster's claims and awarded Bang Energy and its CEO Jack Owoc their attorneys' fees and costs.

69.     Similarly, on June 17, 2019, a California federal court rejected a motion filed by Monster to take BANG® energy drinks off the market in the United States.  (Case No. 5:18-cv-1882, Dkt. Nos. 15, 122.)

**B.     Monster's Long-Standing History of Abusing the Legal Process to Bully Its Competitors and Thwart Competition**

70.     Monster's tactics against Bang Energy unfortunately appear to be part and parcel of Monster's *modus operandi* – to attack any and all competition through frivolous lawsuits.

71.     Monster's reputation as a litigation "bully" and the company's abusive litigation tactics, including against other energy drink companies, are well-documented, and were cited as far back as 2010 by U.S. Sen. Patrick Leahy in his push for a congressional study on whether small businesses were being harmed by such tactics.[18]  More recently, the title of a 2016 article captures well Monster's litigious ways:  "Monster Energy: The World's Biggest Bully When It Comes to Small Businesses."[19]  The article opines: "[u]nfortunately, like a lot of powerful entities, Monster is also a merciless bully—one that bankrupts and squeezes out small businesses at every turn."

72.     The 2016 "World's Biggest Bully" article notes that "over the last four years, Monster has sued at least 50 small businesses . . . and they don't appear to be stopping anytime

---

[18] *See* Bill Donahue, *Energy Drink Co. Calls Monster A 'Trademark Bully', Law360* (September 15, 2014), https://www.law360.com/articles/577502 (last visited August 6, 2019).

[19] *See* Evan Allgood, *Monster Energy: The World's Biggest Bully When It Comes to Small Businesses,* Energy Drinks Lawsuit (March 23, 2016), https://www.energydrinkslawsuit.com/monster-energy-worlds-biggest-bully/ (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

soon."  A 2018 article likewise notes that Monster has been the biggest trademark bully on the

block since 2012."[20]  Tellingly, yet another 2018 article highlights Monster's "impressive losing

streak" in trademark disputes.[21]

73.     The "impressive losing streak" alone is illustrative of the manner in which Monster

so liberally resorts to the judicial process to chill legitimate business competition and stamp out

any product that undermines its diminishing share of the energy drink market.  Indeed, in the

European version of Monster's September 2018 lawsuit, the court in Amsterdam deemed Monster

to be the "losing" party, ordering Monster to pay the attorneys' fees and legal costs of Bang

Energy, Bang Energy's European subsidiary, and Bang Energy's CEO Jack Owoc.[22]

## V.   MONSTER'S CREATION OF THE TAB DOMAIN AND THE TAB WEBSITE TO CAUSE PECUNIARY AND REPUTATIONAL HARM TO BANG ENERGY

74.     After filing its meritless September 2018 lawsuit, as amended on April 3, 2019, and

its meritless European lawsuit, Monster launched a massive online smear campaign, anchored by

the TAB Domain and the TAB website.  The creation of the TAB website was another extension

of Monster's malicious and anti-competitive attempts to confuse the public and inflict damage

upon Bang Energy, its CEO, and BANG® energy drinks.

75.     The TAB website employed a number of duplicitous tactics including, but not

limited to:

---

[20] *See* Kate Montgomery, *What makes a Monster?:  Monster Energy Company's History as a Brand Bully*, Law-inspiring (August 6, 2018), https://lawinspiring.com/what-makes-a-monster/ (last visited August 6, 2019).

[21] *See* Timothy Geigner, *Monster Energy Loses Again, This Time to The NBA*, Tech Dirt (September 25, 2018), https://www.techdirt.com/articles/20180921/13345540691/monster-energy-loses-again-this-time-to-nba.shtml (last visited August 6, 2019).

[22] *See* Stack3d, *Monster ordered to pay legal fees in European suit against Bang Energy* (May 12, 2019), https://www.stack3d.com/2019/05/bang-energy-europe-lawsuit-monster-energy.html (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

- Lodging baseless attacks against the stated ingredients in BANG® products, and in particular, falsely claiming that BANG® does not contain creatine;

- Falsely claiming also that Bang Energy does not have a patent on its form of creatine, Super Creatine®;

- Fabricating statements that were never made and mischaracterizing statements by Bang Energy and Bang Energy's CEO Jack Owoc; and

- Doctoring and misrepresenting copyrighted materials of Bang Energy to manufacture Monster's desired and deceptive narrative.

76.     The TAB website was clearly designed to injure Bang Energy and its CEO, and denigrate the BANG® line of products.

### A.     Monster's False Statements that BANG® Does Not Contain Creatine

77.     On the TAB website, Monster posted false and disparaging statements that "Bang DOES NOT contain creatine, much less a special or enhanced form of creatine."  *See* **Exhibit D**, p. 2 ("TAB Claim #1").  To the contrary, the labels on Bang Energy's BANG® brand of products expressly identify Bang Energy's patented form of creatine called Super Creatine®, which is clearly defined in the list of ingredients as "SUPER CREATINE® (Creatyl-L-Leucine (Creatine bonded to L-Leucine))."

78.     Because natural creatine is created in the body, all manufactured creatine supplements are synthetic formulations meant to mimic the body's endogenous creatine, relying on varied and evolving delivery systems.  They include creatine ethyl ester, creatine citrate, creatine maleate, creatine hydrochloride, and creatine monohydrate, among others.  Bang Energy's next-generation form of creatine, Super Creatine®, is the result of extensive testing and research to find and patent the first and only water-stable formulation.  Further, Bang Energy's patent application accurately provides that BANG® contains a creatine compound and relevantly states: "The subject invention provides stable aqueous compositions of at least one amide-protected,

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

biologically-active form of creatine (creatyl-amide) molecule . . ..”[23]

79.     Monster's own testing has confirmed that BANG® contains creatyl-L-leucine.

80.     Thus, Monster's statements on the TAB website about creatine are false, rendering such statements defamatory and libelous.

**B.     Monster's False Statements that Bang Energy Does Not Have a Valid Patent on Super Creatine®**

81.     On the TAB website, Monster posted or caused to be posted false and disparaging statements that "The United States Patent & Trademark Office ("USPTO") has rejected or cancelled all claims on Jack Owoc's patent for 'Super Creatine'" (emphasis added).  *See* **Exhibit D**, pp. 3-4 ("TAB Claim #2").  The statement that the USPTO has "cancelled all claims" on this patent is false.

82.     The USPTO has not published and issued a reexamination certificate cancelling the claims under 35 U.S.C. §318(b), 37 C.F.R. § 42.80.   Thus, the claims in the patent are not cancelled, nor can they be adjudged to be invalid, rejected, or cancelled.

83.     While the Patent Trial and Appeal Board ("PTAB") affirmed a decision by a panel of examiners to reject Bang Energy's patent claims as obvious, at the time of the false statements at issue, the USPTO had not yet issued a certification of cancellation and the time for filing an appeal had not yet occurred.  The certificate of reexamination cannot and will not issue until all reviews, including any petition for certiorari review filed by Bang Energy, is terminated or time for appeal has expired.  Further, patents are entitled to a presumption of validity.  35 U.S.C. § 282; *see also W. Falcon, Inc. v. Moore Rod & Pipe, LLC*, No. H-13-2963, 2015 U.S. Dist. LEXIS 79296, at *21-22 (S.D. Tex. June 18, 2015) (patentees may sue for infringement so long as a claim-

---

[23]  *See* U.S. Patent No. 8,445,220 B2 (issued May 21, 2013).

at-issue has not been cancelled, and patent claims are not cancelled until a certificate issues after the *inter partes* review appeals are exhausted).  Bang Energy intends to request a rehearing and, if necessary, to appeal the decision to the Court of Appeals for the Federal Circuit.

84.     Therefore, the patent remains valid (and is not cancelled) unless and until the USPTO takes action, which can only occur, if at all, after Bang Energy's review and appellate rights are fully exhausted.  As such, Monster's claims on the TAB website that Bang Energy does not have a valid patent on Super Creatine® are false and libelous.

**C.      Monster's False Accusations that Bang Energy and its CEO are Making Certain Health Claims About BANG®**

85.     The TAB website also attributes certain health claims about BANG® products to Bang Energy and its CEO that were simply never made.  In a deliberate attempt to manufacture false statements from Jack Owoc about the health benefits of BANG®, Monster posted or caused to be posted doctored excerpts of a video interview with Owoc ("YouTube video"), which misrepresent and take Owoc's statements entirely out of context in order to further Monster's false narrative about Bang Energy and its popular BANG® products.  In addition, these video excerpts posted on the TAB website are copyrighted by Bang Energy and were used by Monster without Bang Energy's permission.

86.     Specifically, Monster claims that Owoc stated that: "Bang Can 'Reverse Mental Retardation'" ("TAB Claim #3"), that "BANG CAN HELP CURE Alzheimer's Disease, Parkinson's Disease, Huntington's Disease or other forms of dementia" ("TAB Claim #4"), and that Bang contains a "meaningful amount" of BCAAs and CoQ10 ("TAB Claim #5").  *See* **Exhibit D**, pp. 5-7.  Owoc and Bang Energy never made any such statements, and Monster's attributed claims are false and libelous.

87.     As clearly stated toward the beginning of the <u>full</u> YouTube video, Owoc is

addressing the "future of creatine," which he states will be more about "brain than brawn."  Owoc discusses the cognitive limitations in humans with aging and explicitly states that: "[w]e could possibly reverse *that*. . ."  based on studies showing that creatine peptides like creatyl-L-Leucine in BANG®, i.e., with a long chain fat added to them, cross the blood brain barrier more effectively than creatine alone.  Monster conveniently omits that it is Owoc's personal belief that future possible innovations with creatine peptides, like creatyl-L-Leucine, could "possibly" reverse regular mental aging, and the failure of Monster to acknowledge Owoc's use of the word "possibly" indicates a malicious desire to confuse the public, defame Owoc, and disparage Bang Energy.

88.   Owoc also never stated or claimed that BANG® "can help cure" Alzheimer's, Parkinson's, Huntington's or other forms of dementia; rather, Owoc simply makes a general statement that creatine generally "helps with" these forms of dementia, which is supported by studies indicating that creatine is a leading candidate in the fight against age-related diseases.[24] Further, it is undisputed that BANG® energy drinks contain caffeine, and credible sources of authority conclude that caffeine helps with Alzheimer's and dementia.[25]  For example, "A review of creatine supplementation in age-related diseases: more than a supplement for athletes," NIH National Institute on Aging (September 15, 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4304302/ (last visited July 28, 2019), concluded:

---

[24] *See, e.g*.,  Smith, R.N., Agharkar, A.S., Gonzales, E.B., *A review of creatine supplementation in age-related diseases: more than a supplement for athletes*,  NIH National Institute on Aging (September 15, 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4304302/ (last visited August 6, 2019).

[25]  *See, e.g.*, *4 Surprising Benefits of Coffee*, Alzheimer's.net, Jan. 4, 2017 https://www.alzheimers.net/2014-04-09/benefits-of-coffee/ (last visited August 6, 2019) ("[R]ecent studies indicate that [caffeine] can actually improve your health — from boosting brain power, to delaying Alzheimer's disease and improving memory as you age.").

Creatine supplementation is in a phase III clinical trial for the treatment of the energetic deficiencies in Huntington's disease. With promising effects thus far, CREST-E remains continually funded by the National Center for Complementary and Alternative Medicine (NCCAM) and the Food and Drug Administration (FDA) as the largest therapeutic trial ever for Huntington's disease. The usefulness of this compound may prove an important deterrent at beginning stages of dementia or even for increasing muscle strength in Parkinson's disease patients. Furthermore, creatine may serve as a preventative treatment for the long-term consequences of stroke but may play a more complicated role in Alzheimer's disease. Despite the wide range of uses for creatine supplementation, this dietary supplement should be the focus of additional studies for the treatment of age-related diseases.).

Accordingly, Monster's deceptive and misleading statements on the TAB website are confusing to the public, defamatory to Owoc, and disparaging to Bang Energy and its products.

89.    Monster also falsely attributes to Owoc and Bang Energy the claim that "Bang contains a 'meaningful' amount of BCAAs and CoQ10." *See* **Exhibit D**, pp. 7-9.  Once again, reality does not comport with Monster's fiction.  Bang Energy and Owoc's statements regarding BANG® products, including on its website, marketing materials, and the products' actual labels, do not use the term "meaningful."  In fact, on the BANG® labels, Bang Energy does not specify or attempt to characterize the amount of BCAAs or CoQ10 in the product at all (nor does Monster in its knockoff Reign product).  Instead, this attributed claim was fabricated by Monster to advance its own narrative about Bang Energy and its BANG® products.

### D.   Monster's Brazen Copyright Infringement

90.    In addition to the foregoing defamatory and disparaging statements, Monster and Markerly have willfully infringed Bang Energy's protected information, including copyrighted videos and photographic images found on Bang Energy's Instagram and YouTube accounts, for Monster's commercial gain.  *See generally* Exhibit D.

91.    Each of the Bang Energy videos and images misappropriated on Monster's TAB website was created by Bang Energy and is properly registered with the United States Copyright

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

Office.  *See* **Exhibit P** (Bang Energy's Certificates of Registration).  Monster and Markerly's unauthorized use of Bang Energy's protected information is therefore illegal under U.S. copyright law and related state law.

## VI.   MONSTER LAUNCHES ITS INFRINGING "REIGN" LINE OF PRODUCTS

92.     Bang Energy owns the BANG® trademark, which it registered with the USPTO on December 9, 2008, U.S. Registration No. 3,545,129 ("BANG® Trademark"), for nutritional supplements and ready-to-drink nutritionally fortified beverages, and owns the trademarked tagline "Potent Brain and Body Fuel."

93.     Bang Energy uses the BANG® Trademark for its BANG® line of energy drinks, which contain, among other ingredients, Super Creatine®, branched-chain amino acids ("BCAAs"), and coenzyme Q10 ("CoQ10").  These ingredients are featured in all capital letters around the rim of the top of a 16-ounce can.  Bang Energy's trademarked tagline "Potent Brain and Body Fuel" is also prominently displayed on the front of the can under the name of its BANG® brand of caffeinated energy drinks.

94.     BANG® has a unique appearance and is recognizable as the style, work, and trade dress of Bang Energy, which makes BANG® visually appealing and distinctive from all other energy drinks and beverages sold by retailers.  BANG® is sold with a black background with a contrasting, flavor-dependent, bold, brightly colored design for the rest of the can with a large stylized "b" logo in the same bold, bright color(s) as the rest of the color(s) on the can.

95.     Bang Energy has distributed and sold its BANG® line of products since October 2012 to a wide range of consumers, distributors, and retailers, and has spent significant amounts of time, effort, and other resources promoting its BANG® energy drinks featuring its unique trade dress.

96.     BANG® has gained exceptional notoriety and popularity, capturing a significant

portion of the energy drink market in the last several years.

97.   In October 2018, Monster formed Reign Beverage and, on or around March 25, 2019, Monster, through Reign Beverage, launched an infringing line of energy drinks called Reign. Monster launched the Reign drinks to specifically target Bang Energy's BANG® energy drinks and confuse consumers by competing directly with Bang Energy in the fitness-oriented energy drink space.

98.   Reign labels, like BANG®, have a black background with a contrasting, flavor-dependent, bold, brightly colored design for the rest of the can with the terms BCAA, AMINOS, and COQ10 going around the rim of the top of a 16-ounce can.  Reign also infringes on Bang Energy's trademarked tagline "POTENT BRAIN AND BODY FUEL," with the use of the tagline "TOTAL BODY FUEL" which, also identical to BANG®, is prominently displayed on the front of the can under the name of the product.

99.   A side-by-side comparison demonstrates the confusing similarity of BANG® and Reign:



100.   Reign's labels look nothing like Monster's usual trade dress.  Instead, they are nearly identical and confusingly similar to Bang Energy's own aesthetically appealing and

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

distinctive trade dress for BANG® and copies the phrase "body fuel" from Bang Energy's trademarked tagline "Potent Brain and Body Fuel."

101.    Monster's creation and launch of Reign is part and parcel of its vendetta against Bang Energy.  Rather than try to compete with BANG® head to head, Monster's scorched-earth smear campaign against Bang Energy's BANG® product was carefully timed to coincide with the introduction of Monster's shameless BANG® knockoff, with the goals of confusing consumers, destroying Bang Energy, and replacing BANG® with its infringing Reign products.

## VII.   MONSTER ENGAGES MARKERLY TO SOLICIT AND COMPENSATE "INFLUENCERS" TO DO MONSTER'S DIRTY WORK

### A.   The Monster-Markerly-Influencer Alliance

102.    In or around early to mid-March of 2019, in preparation for the imminent launch of Reign, Monster engaged Markerly to bolster the smear campaign against Bang Energy and BANG®.  The Monster-Markerly campaign relied heavily on the TAB website and added a dubious directive to report Bang Energy to the FDA.[26]  Monster and Markerly used this platform, and related compensation, to incite a plethora of third parties to post false and libelous statements about Bang Energy, its products, and CEO Owoc.

103.    On or around March 20, 2019, Markerly CEO Justin Kline ("Kline"), sent a mass

---

[26] The Federal Trade Commission brought an action in 2014 against a major corporation for engaging in similar misconduct.  The action was the result of a failure to adequately disclose that the corporation paid online "influencers" to promote their service and product offerings.  The defendant in that FTC action hired online influencers through an agency, precisely as Monster has done in the present case.  In expressing displeasure with the corporation's deceptive conduct, the Director of the FTC's Bureau of Consumer Protection noted: "Consumers have the right to know if reviewers are providing their own opinions or paid sales pitches . . . [companies] need to be straight with consumers in their online ad campaigns."  Press Release, Federal Trade Commission, Warner Bros. Settles FTC Charges It Failed to Adequately Disclose It Paid Online Influencers to Post Gameplay Videos (July 11, 2016), https://www.ftc.gov/news-events/press-releases/2016/07/warner-bros-settles-ftc-charges-it-failed-adequately-disclose-it (August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

e-mail which potentially reached "over 1B people across social platforms."  The "subject" of the e-mail is "Campaign Opportunity."  The text read: "I'm writing to see if you're interested in working with us on a campaign to help prioritize a case with the FDA.  Bang Energy has 8 active lawsuits due to false advertising and marketing.  Checkout [link to the TAB website] to learn more.  I'm sure you can think of some real interesting things to talk about once you visit the website."  *See* **Exhibit Q** (Kline's March 20, 2019 e-mail).

104.   Kline's e-mail continued: "If you would like to participate in this campaign to help spread the truth and prioritize this case with the FDA, please apply here [link provided] and let us know what it would cost to collaborate."  *See* **Exhibit Q**.

105.   Markerly referred to its efforts as the so-called "Bang Truth Campaign" and solicited influencers by stating: "This is a truth awareness campaign about the energy drink Bang.  You can see the lawsuits and watch videos of the CEO's statements" at the TAB website.

106.   Neither Markerly nor any of the participant influencers identified to date disclose any relation to Monster; instead, Monster hid in the shadows and paid off unqualified minions, as well as Markerly do its online dirty work.

107.   The influencers retained by Markerly at Monster's behest to do paid work for Monster, without ever revealing any connection to Monster, in many instances provide no indication that they are "sponsored" or "endorsed" or "paid for" opinions.  The handful of influencers that do disclose an unidentified sponsorship deceitfully claim that these "thoughts are my own" and/or derived from "my own research online."  However, these claims of independence by the influencers are implausible and likely false, as their posts almost exclusively regurgitate the content of and provide links to the TAB website.  Further, these individuals' self-described areas of interest/expertise indicate that they lack knowledge of the subject matters on which they purport

to opine, and instead are simply parroting information provided by Monster and Markerly in exchange for compensation.

108.    Illustrative of the shortcomings of certain of these influencers is "Emily Buys," a/k/a "The Clever Housewife."  In Buys' own words, she typically blogs about her "adventures as a wife, mother, and woman" and creating "yummy recipes."

109.    In April 2019, Buys posted about BANG® on her blog, criticizing Bang Energy and its CEO's science-based claims regarding BANG®.  While Buys claims the "thoughts are my own" and "came directly from my own research online," her lack of any known scientific expertise and reliance on the TAB website indicates otherwise.

110.    Buys states: "If you're not a fan of liars, or someone telling you something is good for you when research shows otherwise, then you're in for a shock when it comes to Bang Energy CEO Jack Owoc."  Buys cites only to the manufactured falsehoods provided by Monster and Markerly on the TAB website, and she has re-posted her false and libelous blog on Facebook, where Buys has nearly 50,000 followers.[27]

111.    As a further example, Bayann Aburub operates Bay's Style Diary, a Fashion and Lifestyle Blog.   Aburub is a self-described "creative soul" who has "a pretty glam style" with a "love for fashion and photography."  In her blog, Aburub sharply criticizes Bang Energy and states: "What's even crazier is that, the research about this ingredient he uses, likely does not even have the same effect on the human body that actual creatine does!"[28] Aburub, like the other influencers

---

[27] *See* Emily Buys, *The Truth About Bang Energy Drink*, Clever Housewife (April 2019), https://cleverhousewife.com/2019/04/the-truth-about-bang-energy-drink/ (last visited August 6, 2019).

[28] *See* Bayann Aburub, *Why You Should Pay Attention to the Ingredients – The Truth About Bang Energy*, Bay Style Diary (April 4, 2019), http://baysstylediary.com/2019/04/16/why-you-should-pay-attention-to-the-ingredients-the-truth-about-bang-energy/ (last visited August 6, 2019).

hired by Monster and Markerly, does not appear to have any qualifications to opine on the efficacy of the ingredients in BANG® on the human body.

112.    The number of influencers hired by Monster and Markerly, and the number of posts originating from the Monster-Markerly campaign, has yet to be determined; and, in some cases, influencers that have been enlisted to prosecute the TAB campaign cannot be readily identified. Bang Energy anticipates the adding of additional Influencer Defendants to this action as its investigation continues.

113.    Defendant Jennifer Quillen, an influencer/blogger self-styled as "The Rebel Chick," generally posts about "recipes," "dating stories," "adventure," and "travel."  As with Buys, Quillen relies solely on the false TAB website claims for her blog about BANG®, specifically TAB Claims 1-4.[29]  She also admits that she was "hired to do this campaign."  Quillen also claims to have watched the entire 10-minute YouTube video, rather than Monster's spliced and doctored version. But clearly she did not, offering the following false and defamatory statements:

> Statements made by Bang SEO [*sic*] Jack Owoc that Bang can reverse the "mental retardation" as we age and helps with Alzheimer's, Parkinson's, Huntington's or other forms of dementia are 100% false.  He's actually gone to lengths to try and dispute that he's ever said this, but as I spent an entire 10 minutes and 50 seconds watching the YouTube video in question…he ABSOLUTELY says this.  He makes these claims plain as day!

114.    Defendant Martin self-promotes as a "lifestyle blogger living in Connecticut with my husband and our 3 kids, plus a whole lot of assorted indoor and outdoor pets" and indicates a "love to travel, play games, watch movies, and be outside together!"  Despite the absence of any relevant subject matter training, education or experience, Martin purports to criticize the science underlying Bang Energy's products and to be knowledgeable about FDA standards as to

---

[29] See Jennifer Quillen, *The Truth About Bang Energy Drink*, The Rebel Chick (April 2, 2019), https://therebelchick.com/the-truth-about-bang-energy-drink/ (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

"meaningful" amounts of "BCAA's and CoQ10" levels.

115.    Martin's influencer webpage titled "this mama loves. food. craft. travel. life," compensated through the Monster-Markerly alliance, includes a pop-up link to share her defamatory and disparaging post via eight on-line mediums – "Help spread the word.  You're awesome for doing it!"  The webpage repackages the TAB website content and contains no indication of any sponsorship at all.  Notably, "this mama loves" also has a Facebook page, which links to the post, and the Facebook page has over 45,000 followers.  On her Facebook page, the TAB website-related post has hundreds of "likes," "comments," and "shares."  The Facebook post also indicates that it is the result of a "Paid Partnership," but does not identify Markerly or Monster.[30]

116.    Martin's lack of relevant subject matter knowledge is plain based on a related post she made on Twitter, under her full name, "Brett Martin."  There are literally hundreds of lawsuits involving energy drinks, many of them part of Monster's "impressive losing streak," yet Martin is unaware of a single one, involving Monster or any other energy drink company.  In response to the post, which purports to independently opine on lawsuits against Bang Energy:

- A commenter asked: "What about the other energy drinks?  Do they have lawsuits filed against them?  Sticking to my iced tea for now."

- Martin responded: "I don't know.  I'm doing water."[31]

117.    Defendant Kubsch typically posts about her pregnancy, baby shower, "birth story" and post-partum "survival tips."  Yet, in her blog called "Twins in Tow," Kubsch posted an item

---

[30]    *See* Brett Martin, *The Truth About Bang*, This Momma Loves, https://www.thismamaloves.com/the-truth-about-bang/ (last visited August 6, 2019).

[31]    *See* Brett Martin (@brettbmartin), Twitter (Tweet dated April 11, 2019) https://twitter.com/brettbmartin/status/1116488041135333377 (last visited August 6, 2019).

on April 4, 2019 entitled "The Truth About Bang Energy."  While Kubsch admits that hers is a "sponsored post" for which she was compensated, she does not mention any connection to Monster or Markerly.  She also insists that all thoughts about BANG® were hers, which resulted from her own research and from the TAB website where she allegedly learned that the "CEO of Bang Energy Drink has made quite a few false claims regarding the Bang drink, which is quite concerning."[32]

118.   Defendant Carder, a 29-year-old stay at home mother who "loves to travel" and "lives on coffee," runs a blog focusing on family life, marriage tips, and child-rearing suggestions.  According to Carder, after experiencing financial issues, she began blogging in earnest for profit.  Carder claims that her blog has 19,000 followers and 15,000-page views per month.  Carder does not disclose any relevant employment history or educational background that would qualify her to make claims regarding the efficacy of ingredients in an energy drink.

119.   On April 5, 2019, Carder posted "The Shocking Truth About Bang Energy Drinks That You Should Know," a post which essentially parrots the falsehoods from the TAB website and adds the Markerly directive to call for an FDA investigation.  While most of Carder's paid product reviews identify the company endorsing the posts, Carder's TAB post only indicates it was "a sponsored post" for which she was "compensated," but does not reveal the source of her compensation.  Further, like certain of the other influencers identified herein, Carder implausibly claims that "all my thoughts are my own and came directly from my own research online."[33]

---

[32] *See* Christin Kubsch, *The Truth About Bang Energy*, Twins in Tow (April 4, 2019), https://twinsintowblog.com/the-truth-about-bang-energy-drink/ (last visited August 6, 2019).

[33] *See* Crystal Carder, *The Shocking Truth About Bang Energy Drinks That You Should Know*, Crystal Carder Blog (April 5, 2019), https://crystalcarder.com/truth-about-bang-energy-drinks/ (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

120.    Defendant Bowley-Reagan, a homeschooling mother of three, runs a blog called "Simply Being Mommy."   In April of 2019, Reagan authored a post called "The Truth About Bang" which also follows the Monster-Markerly playbook of false claims about Bang Energy and BANG®, and urges her readers to "rally together" to call for an FDA investigation of BANG®.[34] But, there is no mention of Monster or Markerly in the posting.

121.    Defendant Shores runs the blog "Being Summer Shores."  On April 9, 2019, Shores authored a similar post called "The Shocking Truth About Bang Energy," with the same false claims and a link to the TAB website, without mentioning Monster or Markerly in her posting.[35]

122.    Defendant Killmon is an influencer with a website called "Sundaes & Flip Flops," with over a 1,000 followers on YouTube and 12,000 followers on Twitter.  Killmon's website includes a post called "Do You Know The Truth About Bang Energy?" which concludes with a call to her followers to "Help Bring Bang To An End" by asking for the FDA to investigate BANG®'s questionable ingredients and numerous pending lawsuits.  Killmon claims that her thoughts are her own, but also admits that her post is sponsored, that she is compensated for her time, that the content of her posting came directly from her research online, including from the TAB website.[36]

123.    Defendant Light is an influencer/blogger with a website that has 4,776 Twitter

---

[34] *See* Crystal Bowlet-Reagan, *The Truth About Bang*, Simply Being Mommy (April 3, 2019), https://simplybeingmommy.com/2019/04/03/the-truth-about-bang/ (last visited August 6, 2019).

[35] *See* Summer Shores, *The Shocking Truth About Bang Energy*, Being Summer Shores (April 9, 2019), https://www.beingsummershores.com/blog/the-truth-about-bang (last visited August 6, 2019).

[36] *See* Amber Killmon, *Do You Know the Truth about Bang Energy?*, Sundaes & Flip Flops (April 2, 2019) https://sundaesflipflops.com/do-you-know-the-truth-about-bang-energy/ (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

followers, 3,236 Facebook fans, 1,630 Pinterest follows, 1,270 Bloglovin' followers, 5,175 Instagram followers, and 7,134 unique visitors per month to her website with an all-time page view of 3,635,738 as of January 6, 2019. On her blog, she authored a blog entry "The Truth About Bang Energy Drink" that misrepresents Owoc's statements following the Monster-Markerly campaign discrediting BANG® products. Light also claims that all her "thoughts are her own," but admits that she was compensated for her time writing about Bang Energy, and that sources for the content of her blog included the TAB website.[37]

124. Defendant Henderson, on her Instagram account (@ariannajonae), where she has approximately 14,600 followers, holds herself out as an "Actress + Singer + Host + Digital Content Creator." On her YouTube channel, where she has over 90,000 subscribers, she describes herself as someone who likes "girl chat" and "simple beauty tutorials" and is "obsessed with all things pop culture and entertainment."[38]

125. On April 15, 2019, Henderson posted to her Instagram account and YouTube channel a video of her purportedly educating viewers about BANG®. On the YouTube video, she provides a link to the TAB website and gives a "[s]pecial thanks to Markerly for sponsoring this video and enlightening the world on what Bang Energy is really doing!" Henderson begins her video by stating that it is a "little bit different than anything that I've ever really posted," because she wanted to share something she found to be "crazy." Henderson then proceeds to parrot Monster's deceptive and frivolous claims by (a) falsely representing that Bang Energy's CEO

---

[37] *See* Amanda Light, *The Truth about Bang Energy Drink*, Prim and Propah (April 1, 2019), http://www.primandpropah.com/2019/04/the-truth-about-bang-energy-drink.html (last visited August 6, 2019).

[38] *See* Arianna Jonae, YouTube About Me, https://www.youtube.com/user/itsaribby/about (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

claimed that BANG® can reverse the effects of mental disabilities, which she stated is "completely false;" (b) falsely representing that the USPTO rejected Bang Energy's patent on BANG® so that "so they don't have any patents at all, like nothing"; (c) inviting viewers to "hop on board" and visit the TAB website and post videos of their own; and (d) requesting that viewers also encourage the FDA to investigate Bang Energy's "claims" regarding BANG®.[39]

126.    Defendant Wong, also known as Kiki Wong, is a 30-year-old who normally blogs about travel and fashion.  On April 9, 2019, Wong posted a home video on her YouTube channel titled "The Truth About Bang – Why You SHOULD NOT Drink Bang!" with a link below the video the TAB website.[40]  Defendant Wong recites the five disparaging claims from the TAB website, in as much to say do not get "Bang-Boozled."  The video does not indicate a sponsorship of any kind.  The video leads the viewers to believe that Wong is an expert in health and fitness with her introductory claims.  The reality is she has just recited the Monster-Markerly campaign disparaging Bang's products throughout the video.

127.    The Monster-Markerly smear campaign has gone international.  Laura Dawson, located in the United Kingdom, is a self-described "award-winning entrepreneur" who blogs under "Elle Blonde" and "loves to chat."  Laura (or Elle, or L) boasts that she only works four hours a day to blog and update ELLEfluence, "an online coaching website dedicated to helping people profit from their online passions."   On April 3, 2019, Laura published a post that, not only regurgitates the TAB script, also accuses Bang Energy of "criminal" activity and includes a full-page photo of an elderly woman with disheveled white hair in an effort to highlight Monster's false, yet attention grabbing, attributions concerning dementia.  Buried at the end of the blog in

---

[39] *See* https://www.youtube.com/watch?v=lfupTczUIcg (last visited August 6, 2019).

[40] *See* https://www.youtube.com/watch?v=3PY15saJIUk (last visited August 6, 2019).

miniscule seven-point font, Laura discloses that the derogatory posting was: "Paid for in collaboration with The Truth About Bang. All views are our own."[41]

128.    Despite the disingenuous assertions from the Influencer Defendants that the views expressed on their websites are their own, the blogs simply parrot the script of the TAB website, with identical false claims about Bang Energy and links to lawsuits against Bang Energy filed or inspired by Monster, as summarized below:

<div style="border:1px solid">

**False Claims on the www.thetruthaboutbang.com Website:**

**Claim #1:**  BANG® does not contain creatine;
**Claim #2:**  BANG® does not have a valid patent for Super Creatine;
**Claim #3:**  Bang Energy claims that BANG® can reverse mental retardation;
**Claim #4:**  Bang Energy claims that BANG® can help cure Alzheimer's, Parkinson's, Huntington's or other forms of dementia;
**Claim #5:**  Bang Energy claims that BANG® contains meaningful amounts of BCAAs and CoQ10.

| Influencers | Repeated TAB Claims from Monster-Markerly Campaign |
|---|---|
| Jennifer Quillen | 1, 2, 3, 4, cites lawsuits located on TAB website |
| Brett Martin | 1, 2, 3, 4, 5, cites 8 active lawsuits |
| Christin Kubsch | 1, 2, 3, 4, 5, links to complaints of lawsuits |
| Crystal Bowley-Reagan | 1, 2, 3, 4, 5, cites lawsuits located on TAB website |
| Summer Shores | 1, 2, 3, 4, 5, cites 8 active lawsuits |
| Amber Killmon | 1, 2, 3, 4, cites several lawsuits located on TAB website |
| Amanda Light | 2, 3, cites several lawsuits located on TAB website |
| Crystal Carder | 1, 2, 3, 4, 5, cites 8 active lawsuits |
| Laura Dawson | 1, 2, 3, 4, 5, cites 8 active lawsuits |
| Arianna Henderson | 1, 2, 3, 4, cites 8 active lawsuits |
| Kristin Wong | 1, 2, 3, 4, 5, cites to TAB website below video |

</div>

129.    The Monster-Markerly alliance, and the hiring of unqualified individuals to take the laboring oar in its widespread and malicious smear campaign against Bang Energy, has had

---

[41] Laura J. Dawson, *Bang – The Truth About Bang, what you need to know!*, elle blonde (April 5, 2019)  https://elleblonde.com/blog/2019/04/03/truth-about-bang/ (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

the desired impact.  Illustratively, the posts have solicited the following representative comments:

- "IM SO HAPPY YOU POSTED THIS. I'm not turning this into a political thing, but this guy just denies LIKE SO MANY POLITICIANS [Jack Owoc] probably going to run for office one day. He'd fit RIGHT IN!!!. . . He is a compulsive liar it's sick."[42]

- "Yes, it's CRAZY! I was hired to do this campaign, but once I watched the videos, I was just in SHOCK! He outright denies things that he posted on his own YouTube!"[43]

- "I'VE BEEN DRINKING THIS FOR CREATINE TO HELP ME GET MORE MUSCLE WHAT THE HELL."[44]

- "[What the hell]? people are drinking this in the gym all the time as a health drink"; to which Amber Killmon, the original paid poster, responded: "Exactly! So many people hear something and take it at face value… I learned a LONG time ago to do my own research because people lie, and this guy lies a LOT!"[45]

130.    There are, however, individuals with a heightened ability for critical analysis, who see through the defamatory charade manufactured by Defendants for their own pecuniary gain at the wrongful expense of Bang Energy and others in the consuming public.

131.    A representative sample are two of the "comments" to the "mama loves" Facebook post:

- "Lawsuits stem from main competitor, Monster Energy. Lawsuits are frivolous attempts to bump Bang off the market because Monster is the leading brand and is steadily losing their share of shelf space to Bang." – Steve Pruden

- "Would love to see the paper trail back to Coca Cola/Monster that paid for this #AD."

---

[42] Jennifer Quillen, *The Truth About Bang Energy Drink*, The Rebel Chick (April 2, 2019), https://therebelchick.com/the-truth-about-bang-energy-drink/#comments (last visited August 6, 2019).

[43] *Id*.

[44] Crystal Bowley-Reagan, *The Truth About Bang*, Simply Being Mommy (April 3, 2019), https://simplybeingmommy.com/2019/04/03/the-truth-about-bang// (last visited August 6, 2019).

[45] Amber Killmon, *Do You Know the Truth about Bang Energy?*, Sundaes & Flip Flops (April 2, 2019)   https://sundaesflipflops.com/do-you-know-the-truth-about-bang-energy/   (last   visited August 6, 2019).

– Joey Smith.[46]

132.　Bang Energy has identified certain influencers, named herein as Influencer Defendants, and Bang Energy will issue cease and desist letters to each of them.   If the Influencer Defendants comply fully with the terms of those letters in a reasonably timely manner, Bang Energy will dismiss any such individuals from the Complaint.

## VIII.　MONSTER EXPANDS ITS LEGAL ATTACK AGAINST BANG ENERGY

133.　On April 3, 2019, Monster amended its existing lawsuit against Plaintiff in the Central District of California.  The timing is no coincidence; rather, it is a choreographed piece of the disparagement puzzle, perfectly timed to coincide with the launch of Reign and the commencement of the Monster-Markerly-Influencer smear campaign against BANG®.  The media and the energy drink industry have also recognized the true purpose of Monster's lawsuit against Bang Energy:  Monster had been "jolted" by the surging sales and significant market growth of BANG® and, as has historically been the case, was looking to defend its market share through litigation.[47]

## IX.　MONSTER AND ITS DISTRIBUTORS LAUNCH THE "#FBANG" INITIATIVE TO INTERFERE WITH SALES OF BANG® AT RETAIL LOCATIONS

134.　Monster has developed an initiative called "#fbang" with the slogan "Fuck bang, make it Reign" to galvanize its employees and agents, including Coke distributors, to "take down"

---

[46] On August 2014, a joint press release disclosed a partnership agreement between the parties whereby The Coca-Cola Company ("Coca-Cola") will become Monster's preferred distribution partner globally and Monster will become Coca-Cola's exclusive energy play.  *See* Press Release, Coca-Cola (August 14, 2014), https://www.coca-colacompany.com/press-center/press-releases/the-coca-cola-company-and-monster-beverage-corporation-enter-into-long-term-strategic-partnership (last visited August 6, 2019).

[47] *See* James, F. Peltz, *Monster energy drink maker expands lawsuit against rival Bang*, LA Times (April 3, 2019), https://www.latimes.com/business/la-fi-monster-energy-bang-lawsuit-20190403-story.html (last visited August 6, 2019).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

Bang Energy with directives from, for example, Samantha Amundonson, Sales Communications Manager at Monster Energy, stating (emphasis and parenthetical in original):

> **#fbang CHALLENGE**
>
> It's Friday! Which means you're all out there kicking ass and taking names.
>
> ***We want to see your best video of you kicking bang's ass*** (and taking down their POS, smashing cans, taking their display off the floor, and steeling their cold space).  Post your videos here and let's rally behind the takedown of those losers to offer a superior product, REIGN. Of course, make sure you use the #fbang hashtag so we can see your activity.
>
> The best video will be featured on the MAIN STAGE at ASM this year – heyo! Can't wait to see how you're dominating in the streets!
>
> #fbang

135.    Monster's initiative has been successful.  Monster employees and agents are systematically placing false advertising cards on retail store shelves and in coolers across the country that reference Monster's TAB website and parrot the TAB's false, misleading, and defamatory claims about Bang Energy, its CEO, and BANG® energy drinks.  These cards are placed in front of or near BANG® products to deter consumers from purchasing BANG® product. Examples of these cards include:




136.    Monster employees and agents similarly place cards on store shelves and inside coolers that conspicuously display the Reign name and logo and make false head-to-head comparisons between BANG® and Monster's new knockoff of BANG®, Reign.  As an example:



137.   These cards comparing Reign and BANG® are false and misleading for at least three reasons: (1) Monster claims that Reign contains 5 mg or more of CoQ10, but Bang Energy's testing of Reign products did not detect any CoQ10, while BANG® contains 5.68 ppm (or 2.7mg); (2) Monster claims that Reign has 3 electrolytes and that BANG® does not, but BANG® in fact has 6 electrolytes, or double the number of electrolytes than does Monster's Reign, and (3) Monster states information which switches back and forth from amounts per serving to amounts per can, whenever its suits Monster's false narrative (e.g. claiming zero calories and zero sugar per serving (but not per can), but claiming "2x electrolytes" and not disclosing that it is per can and not per serving).  Specifically, Bang Energy's testing reflects the following:

### CoQ10

Reign's claimed CoQ10 ingredient was **NOT DETECTED**, while BANG® contains **5.68 ppm**.

| Product Name | Lot# | Results on CoQ10 |
|---|---|---|
| **Bang Energy Rainbow Unicorn** | **102219MD** | **5.68 ppm** |
| Reign Energy Carnival Candy | B1921N2 | N.D. <1.0 ppm |
| Reign Energy Sour Apple | B1909NCS | N.D. <1.0 ppm |
| Reign Energy Lemon HDZ | B1933NC5 | N.D. <1.0 ppm |
| Reign Energy Razzle Berry | C1911N2 | N.D. <1.0 ppm |

### Electrolytes

Reign contains only **3** electrolytes, while BANG® contains **6** electrolytes.  Reign contains **more sodium**, while BANG® contains **more potassium**.

| Electrolyte | Reign | BANG® |
|---|---|---|
| | Quantity (per serving) | Quantity (per serving) |
| Sodium | 100 mg | 40 mg |
| Potassium | 35 mg | 85 mg |
| Magnesium | Unknown | 2% DV (from Magnesium Chloride) |
| Calcium | No | Yes (Calcium Chloride) |
| Chloride | No | Yes (Magnesium Chloride and Calcium Chloride) |

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

| Phosphate | No | Yes (Potassium Phosphate Dibasic) |
|---|---|---|

138.   Even more, Monster employees and agents are systematically removing BANG® product from store shelves and cooler space, removing BANG® displays, signs, and other marketing materials from stores, replacing BANG® products with Reign products on store shelves and cooler space, and turning cans of BANG® around or blocking BANG® product from view such that the BANG® name and logo are no longer visible to consumers, thereby increasing sales of Reign at the expense of Bang Energy and confused consumers.  For example, on May 30, 2019, the following image was captured at a retail store in Santa Clara, California:



139.   As another example of interference, on June 14, 2019, in a store in Utah, a representative of Bang Energy discovered the following placement of Reign advertisements directly in front of BANG® energy product to divert customers to Reign products placed on the shelf immediately above:



140.   As another example of interference, on October 11, 2019, a representative of Bang Energy discovered that BANG® energy product was removed entirely from its allocated space and replaced with Reign product in a store in Miami Gardens, Florida:



141.  These acts of interference by Monster and its representatives are deliberate and designed to cause, have caused, and unless enjoined will continue to cause, lost sales of BANG® products across the country, and an increase sales of Monster's knock-off Reign products at the expense of Bang Energy and consumers.

## X.   THREATENING LETTERS SENT BY MONSTERS' ATTORNEYS TO BANG ENERGY'S RETAILERS AND DISTRIBUTORS IN AN ATTEMPT TO INTERFERE WITH BANG ENERGY'S BUSINESS AND DISRUPT SALES OF BANG®

142.  On or about May 2, 2019, Bang Energy learned that its distributors, including Europa Sports Products, were receiving letters from Monster's attorneys, Hueston Hennigan, which ironically threaten legal action against them if they interfered with Monster's products and shelf space allocations.  Examples of these letters are attached as **Exhibit R**.  No evidence exists,

nor is any cited in these letters, that these distributors actually interfered with Monster's products or shelf space allocations, or that Bang Energy directed them to do so, and therefore the sole purpose of these letters from Monster to Bang Energy's business partners was to interfere with Bang Energy's business and its business relationships in the expectation of disrupting the distribution and sales of BANG® products and/or to act as a subterfuge for Monster's scheme to place the TAB cards on store shelves and engage in other acts of interference with the display of BANG® products.

143.   In further despicable acts of interference, Monster and its counsel Hueston Hennigan LLP also sent letters to Bang Energy's retailers, including GNC and The Vitamin Shoppe, to "advise" them of its litigation against Bang Energy.  Examples of these letters are attached as **Exhibit S.**  While sent under the guise of document preservation, Monster and counsel blatantly intend to deceive these retailers by stating as a matter of fact that Bang Energy has falsely advertised, adulterated, and misbranded BANG® in violation of the law, and attaching a copy of their amended complaint dated April 3, 2019.

144.   This letter campaign to Bang Energy's distributors and retailers is clearly intended by Monster and Hueston Hennigan to disparage Bang Energy and its BANG® products, and interfere with Bang Energy's business by encouraging these third parties to discontinue sales of BANG® at their locations and carry Monster's infringing Reign energy drink instead.  GNC alone has more than 6,000 stores in the U.S., including 1,100 store-within-a-store locations within Rite Aid, as well as locations in 49 other countries; The Vitamin Shoppe has over 700 locations in the U.S.; and Europa Sports Products is recognized as an industry leading distributor of sports drinks, and nutritional and sports supplements to mass market retailers, gyms, health food stores, and specialty supplement retailers.  If not immediately enjoined, Bang Energy will suffer

irreparable harm.

## COUNT I
## VIOLATION OF THE LANHAM ACT, 15 U.S.C. §1125(a)
### (*Against All Defendants*)

145.   Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 51 through 55, 60 through 66, 77 through 94, 105 through 135, and 137 through 145 as though fully set forth herein.

146.   Bang Energy is engaged in interstate commerce within the control of Congress and falls within the zone of interest protected by 15 U.S.C. § 1125(a).

147.   As set forth in Paragraphs 8 through 24, 51 through 55, 60 through 66, 77 through 94, 105 through 135, and 137 through 142, Defendants have made and continue to make false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of BANG® energy drinks and Bang Energy's commercial activities and the Monster Defendants' own products and commercial activities, as well as false and misleading comparisons between Monster's Reign and Bang Energy's BANG® products. Defendants' violations have caused harm to the public and, unless restrained, will further damage the public.  More specifically,

- Monster Beverage and Monster Energy have made and continue to make false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of the Monster's flagship products, namely that such products are "energy" drinks and are safe to consume.

- Monster Beverage, Monster Energy, and Reign Beverage have made and continue to make false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of Reign

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

energy drinks, namely that they have 5 mg or more of CoQ10 and have more electrolytes than BANG® energy drinks.

- Energy Beverages, at the direction of and with Monster Beverage, registered and maintained the shame website, thetruthaboutbang.com (the "TAB website"), a fabricated consumer complaint, and directed communications about the TAB website to its e-mail address, dnsadmin@energybeveragesllc.com;

- Monster Energy Company, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, created the domain name and content for the TAB website, including the false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of Bang Energy's BANG® energy drinks and its commercial activities;

- Markerly, at the direction of and in exchange for payment from Monster Beverage and Monster Energy Company, knowingly enlisted and paid the Influencer Defendants, who have material connections and/or agreements with Monster Beverage and Monster Energy Company and/or Markerly not disclosed to consumers, to, and the Influencer Defendants knowingly did, spread the TAB website's intentionally false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of Bang Energy's BANG® energy drinks and commercial activities to hundreds of thousands, if not millions, of third parties throughout the United States, and specifically the State of Florida, by restating, displaying, referring to, hyperlinking to, and strongly encouraging consumers to visit the TAB website;

- Monster Energy, Energy Beverages, and Reign Beverage, at the direction of and

with Monster Beverage, developed false advertising cards that reproduce in hard copy format the TAB website's intentionally false and misleading descriptions and representations of fact in commercial advertising and promotion about the nature, characteristics, and qualities of Bang Energy's BANG® energy drinks and commercial activities and further make false head-to-head comparisons between Reign and BANG® energy drinks (the "retail placards");

- Monster Energy and Reign Beverage, at the direction of and with Monster Beverage, placed the retail placards, or caused the retail placards to be placed, in store coolers and on store shelves in front of BANG® product throughout the United States, and specifically in the State of Florida;

148.   Upon information and belief, Monster Beverage and Monster Energy Company and/or Markerly instructed the Influencer Defendants to falsely state or infer that their opinions are independent when in fact the Influencer Defendants are compensated by Monster Beverage and Monster Energy Company and rely exclusively, or almost exclusively, on the content of the TAB website.

149.   Companies who advertise on social media are required by law to do so in a fair and non-deceptive manner, including by disclosing the existence of a material connection between the company and any person who endorses the company's goods or services on their personal social media account, and the same applies to the false advertising the Influencer Defendants have undertaken on Monster Beverage and Monster Energy Company's behalf.

150.   The statements of the Influencer Defendants, acting on Monster Beverage and Monster Energy Company's behalf, are false and misleading, as most or all of the Influencer Defendants who have disparaged Bang Energy were paid for such support by Monster Beverage

and Monster Energy Company and/or Markerly, and their statements have been and are likely to deceive consumers as to the affiliation, connection, or association of the Influencer Defendants as independent of the Monster Defendants.

151.   Ordinary consumers viewing the Influencer Defendants' disparagement of Bang Energy, its CEO, and BANG® energy drinks, without disclosure of the Influencer Defendants' connection with the Monster Defendants, results in significant portions of the consuming public believing that the Influencer Defendant have independently arrived at their purported views, such that consumers reasonably rely on the Influencer Defendants' false and misleading statements to the consumers' detriment, while in fact the Influencer Defendants were paid by Monster Beverage and Monster Energy Company to disseminate the false and misleading claims.

152.   A reasonable consumer is likely to give greater weight and attention to a communication that is not perceived as an advertisement, and to give greater weight to the opinions of an influencer if the consumer believes the influencer is not paid for the opinions by Bang Energy's biggest competitor, Monster Beverage, a notorious "bully" with a well-established history of trying to destroy, or at least thwart, any and all competition by any and all means possible directly and through its subsidiaries including Monster Energy, Energy Beverages, and Reign Beverage.  It is for this reason that the Federal Trade Commission's Guides Concerning Use of Endorsements and Testimonials in Advertising ("FTC Guidelines") expressly require disclosure with easily understood, clear, and conspicuous language of any "material connection" between a company and a person endorsing that company's goods or services.  *See* 16 C.F.R. § 255.0, *et seq*.

153.   The Monster Defendants knew or should have known that their advertising activities were false, misleading, and deceptive, and knowingly induced and caused third parties to engage in additional acts of false, misleading, and deceptive advertising by repeating their false

and misleading statements.

154.   The Monster Defendants, Markerly, and the Influencer Defendants' false and misleading description and representations of fact have deceived and have the capacity to deceive a substantial segment of consumers, and their deception has had a material effect on purchasing decisions and has influenced and will continue to influence and dissuade current and potential customers from purchasing Bang Energy products.

155.   Bang Energy's and Monster Beverage, Monster Energy, and Reign Beverage's products are offered in interstate commerce and the Monster Defendants, Markerly, and the Influencer Defendants' false and misleading statements were and are made in commercial advertising that affects interstate commerce.

156. The Monster Defendants, Markerly, and the Influencer Defendants have substantially injured Bang Energy's reputation by leading consumers and others in the industry to believe their false and misleading descriptions and representations of fact about the nature, characteristics, and qualities of Bang Energy's BANG® energy drinks and commercial activities and thereby impaired and will continue to impair Bang Energy's ability to compete in the energy drink market, and have diverted and will continue to divert Bang Energy's goodwill and reputation undeservingly to Monster Beverage, Monster Energy, and Reign Beverage.   The Monster Defendants, Markerly, and the Influencer Defendants' false and misleading descriptions and representations of fact about the nature, characteristics, and qualities of Bang Energy's BANG® energy drinks and commercial activities and their false and misleading descriptions and representations of fact about the nature, characteristics, and qualities of Monster Beverage, Monster Energy, and Reign Beverage's own energy products and commercial activities have also caused Bang Energy to lose sales and customers to the benefit of the Monster Defendants and other

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

competitors, and such ongoing deception of consumers has lured and continues to threaten to lure consumers away from Bang Energy in favor of the products sold by Monster Beverage, Monster Energy, and Reign Beverage and other competitors and have forced Bang Energy to incur counter-promotion costs to earn customers back.

157.   Bang Energy's injuries are a direct and proximate result of the Monster Defendants, Markerly, and the Influencer Defendants' violations of 15 U.S.C. § 1125(a).

158.   The Monster Defendants, Markerly, and the Influencer Defendants' actions have caused and will continue to cause Bang Energy both monetary damages and irreparable harm for which Bang Energy has no adequate remedy at law.

<div align="center">

**COUNT II**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE**
**PRACTICES ACT, SECTION 501.204,** *et seq.***, FLORIDA STATUTES**
(*Against All Defendants*)

</div>

159.   Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 51 through 55, 60 through 66, 77 through 94, 105 through 135, and 137 through 145 as though fully set forth herein.

160.   The Monster Defendants' deceptive acts and unfair trade practices, as described in Paragraphs 8 through 24, 51 through 55, 60 through 66, 77 through 94, 105 through 135, and 137 through 145, including: (a) Monster Beverage, Monster Energy, Energy Beverages, and Reign Beverage's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks by and through the TAB website, the websites and social media pages of the Influencer Defendants, and the false advertising placards Monster Energy and Reign Beverage placed or caused to be placed in retail coolers and on store shelves, (b) Monster Beverage, Monster Energy, Energy Beverages' failure to make the requisite disclosures under FTC Guidelines, (c) Monster Beverage, Monster Energy, and Reign Beverage's false and misleading statements about

<div align="center">

55
**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

</div>

its own products, (d) Monster Beverage and Monster Energy's failure to disclose and warn consumers about the potential adverse health consequences of consuming their flagship Monster Energy products, and (e) Monster Beverage, Monster Energy, and Reign Beverage's "#fbang" directive to Monster employees and agents to remove BANG® product from store shelves and cooler space, remove BANG® displays, signs, and other marketing materials from stores, replace BANG® products with Reign products on store shelves and in cooler space, and turn cans of BANG® around or block BANG® product from view such that the BANG® name and logo are no longer visible to consumers, are unlawful and constitute unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade and commerce under Section 501.204, Florida Statutes.

161.   The Monster Defendants' conduct has misled and is likely to mislead consumers acting reasonably under the circumstances, to the consumers' detriment.   Defendants' representations and other acts, practices, and omissions also offend public policy and are immoral, unethical, oppressive, unresponsive, and substantially injurious to consumers.

162.   The Monster Defendants' conduct has also harmed Bang Energy's reputation, severely damaged Bang Energy's goodwill, and diverted sales and customers from Bang Energy in favor of Monster's products, including Reign, or the products of other competitors.

163.   The Monster Defendants' conduct has caused and will continue to cause Bang Energy to suffer both monetary damages and irreparable harm for which Bang Energy has no adequate remedy at law.

## COUNT III
## UNFAIR COMPETITION IN VIOLATION OF FLORIDA COMMON LAW
### (*Against Monster Defendants*)

164.   Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 51

through 55, 60 through 66, 77 through 94, 105 through 135, and 137 through 145 as though fully set forth herein.

165.   Bang Energy competes with the Monster Defendants for a common pool of customers.

166.   Monster's deceptive and fraudulent conduct, as described in Paragraphs 8 through 24, 51 through 55, 60 through 66, 77 through 94, 105 through 135, 137 through 145, is likely to cause and has caused consumer confusion, and includes: (a) Monster Beverage, Monster Energy, Energy Beverages, and Reign Beverage's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks by and through the TAB website, the websites and social media pages of the Influencer Defendants, and the false advertising placards Monster Energy and Reign Beverage placed or caused to be placed in retail coolers and on store shelves, (b) Monster Beverage, Monster Energy, Energy Beverages' failure to make the requisite disclosures under FTC Guidelines, (c) Monster Beverage, Monster Energy, and Reign Beverage's false and misleading statements about their products, (d) Monster Beverage and Monster Energy's failure to disclose and warn consumers about the potential adverse health consequences of consuming their flagship Monster Energy products, and (e) Monster Beverage, Monster Energy, and Reign Beverage's "#fbang" directive to Monster employees and agents to remove BANG® product from store shelves and cooler space, remove BANG® displays, signs, and other marketing materials from stores, replace BANG® products with Reign products on store shelves and in cooler space, and turn cans of BANG® around or block BANG® product from view such that the BANG® name and logo are no longer visible to consumers, are unlawful and constitute unfair methods of competition, unconscionable acts or practices, are unlawful and constitute unfair competition in violation of Florida common law.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

167.    The Monster Defendants' conduct constitutes willful and deliberate efforts to cause Bang Energy reputational harm, cause consumers to refrain from purchasing Bang Energy's products, and divert sales and customers from Bang Energy in favor of Monster's products, including Reign, or the products of other competitors.

168.    The Monster Defendants' conduct has caused consumer confusion and harmed Bang Energy's reputation, severely damaged Bang Energy's goodwill, and upon information and belief, have diverted sales and customers from Bang Energy in favor of Monster's products, including Reign, or the products of other competitors, causing Bang Energy to suffer monetary damages.

169.    As a result of the fraudulent, malicious, and oppressive acts of the Monster Defendants, Bang Energy is also entitled to punitive damages.

## COUNT IV
## TRADE LIBEL
### (*Against All Defendants*)

170.    Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 60 through 66, 77 through 94, 105 through 135, 137 through 145 as though fully set forth herein.

171.    Defendants have published and communicated knowingly false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks to third persons, including without limitation each person who accessed the TAB website and the Influencer Defendants' websites and social media pages, persons who saw Monster's false advertising placards in stores, the recipients of Monster's threatening letters to Bang Energy's retailers and distributors, and all persons with whom these original recipients shared such information, for the express purpose of unlawfully disparaging Bang Energy's business, its CEO, and BANG® energy drinks and causing pecuniary harm to Bang Energy.  More specifically,

- Monster Beverage conceived, development, and orchestrated the plan to unlawfully disparage Bang Energy's business, its CEO, and BANG® energy drinks and cause pecuniary harm to Bang Energy, and enlisted and directed its subsidiaries, Monster Energy Company, Energy Beverages, and Reign Beverage, to participate in the plan to unlawfully disparage Bang Energy's business, its CEO, and BANG® energy drinks and cause pecuniary harm to Bang Energy;

- Energy Beverages, at the direction of and with Monster Beverage, registered and maintained the shame website, thetruthaboutbang.com (the "TAB website"), a fabricated consumer complaint, and directed communications about the TAB website to its e-mail address, dnsadmin@energybeveragesllc.com;

- Monster Energy Company, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, created the domain name and the content for the TAB website, including without limitation, as set forth therein, the intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks and the references and hyperlinks to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Markerly, at the direction of and in exchange for payment from Monster Beverage and Monster Energy Company, knowingly enlisted and paid the Influencer Defendants to, and the Influencer Defendants knowingly did, spread the TAB website's intentionally false and misleading statements about Bang Energy, its

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

CEO, and BANG® energy drinks, to hundreds of thousands, if not millions, of third parties throughout the United States, and specifically the State of Florida, by copying, displaying, referring to, hyperlinking to, and strongly encouraging consumers to visit the TAB website and hyperlinking to and strongly encouraging consumers to review Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Monster Energy, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, developed false advertising cards that reproduce in hard copy format the TAB website's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and refer to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks and identify Bang Energy, and at times its CEO, as Florida residents, and further make false head-to-head comparisons between Reign and BANG® energy drinks (the "retail placards");

- Monster Energy and Reign Beverage, at the direction of and with Monster Beverage, placed the retail placards, or caused the retail placards to be placed, in store coolers and on store shelves in front of BANG® product throughout the United States, and specifically in the State of Florida, and advise and warn

customers not to purchase BANG® product and to instead purchase Reign, thereby
increasing sales of Reign at the expense of Bang Energy and mislead consumers;

- Monster Energy, at the direction of and with Monster Beverage, caused threatening
letters to be mailed to Bang Energy's retailers and distributors that enclosed copies
of Monster's own meritless complaint against Bang Energy in the California
action, which parrots the same intentionally false and misleading statements about
Bang Energy, its CEO, and BANG® energy drinks, to unlawfully disparage, and
did so disparage, Bang Energy's business, its CEO, and BANG® energy drinks
and cause pecuniary harm to Bang Energy.

172.    Defendants published and communicated, and continue to publish and
communicate, these false and misleading statements willfully and maliciously, knowing that they
are false or with reckless disregard of the truth, and Defendants knew or should have known that
such statements and communications would likely induce consumers, retailers, distributors, and
others engaged in the sale, distribution, and advertisement of energy drinks, and dietary and
sports nutritional supplements, not to not to purchase BANG® energy drinks or otherwise deal
with Bang Energy.

173.    Defendants' published falsehoods played and continue to play a material and
substantial part in inducing current and potential consumers, retailers, distributors, and others
engaged in the sale, distribution, and advertisement of energy drinks, and dietary and sports
nutritional supplements, not to purchase BANG® energy drinks or otherwise deal with Bang
Energy.

174.    Each Defendants' false and misleading publications and/or communications
alleged herein are the direct and proximate cause of Bang Energy's actual damages including

damages to its reputation and business, including lost sales and expenses incurred to counteract the disparaging effect of Defendants' publications and/or communications.

175.    Defendants' actions have caused and will continue to cause Bang Energy to suffer both monetary damages and irreparable harm for which Bang Energy has no adequate remedy at law.

176.    As a result of the fraudulent, malicious, and oppressive acts of Defendants, Bang Energy is also entitled to punitive damages.

## COUNT V
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
### (*Against All Defendants*)

177.    Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 60 through 66, 77 through 94, 105 through 135, 137 through 145 as though fully set forth herein.

178.    The Monster Defendants, Markerly, and the Influencer Defendants are each aware that Bang Energy's market share is steadily increasing and that Bang Energy has developed advantageous business relationships with distributors and retailers of sports-related supplements, vitamins, and other health, wellness, and fitness-focused products, as well as others engaged in the sale, distribution, and advertisement of energy drinks, and dietary and sports nutritional supplements.

179.    The Monster Defendants, Markerly, and the Influencer Defendants have each intentionally and unjustifiably interfered with Bang Energy's advantageous business relationships by making knowingly false and misleading statements regarding Bang Energy, its CEO, and BANG® energy drinks and thereby illegally denigrating Bang Energy, its CEO, and BANG® energy drinks in the minds of those with whom Bang Energy enjoyed advantageous business relationships.  More specifically,

- Monster Beverage conceived, development, and orchestrated the plan to interfere with Bang Energy's advantageous business relationships and enlisted and directed its subsidiaries Monster Energy Company, Energy Beverages, and Reign Beverage to participate in the plan to interfere with Bang Energy's advantageous business relationships;

- Energy Beverages, at the direction of and with Monster Beverage, registered and maintained the shame website, thetruthaboutbang.com (the "TAB website"), a fabricated consumer complaint, and directed communications about the TAB website to its e-mail address, dnsadmin@energybeveragesllc.com;

- Monster Energy Company, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, created the domain name and the content for the TAB website, including without limitation, as set forth therein, the intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks and the references and hyperlinks to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Markerly, at the direction of and in exchange for payment from Monster Beverage and Monster Energy Company, knowingly enlisted and paid the Influencer Defendants to, and the Influencer Defendants knowingly did, spread the TAB website's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, to hundreds of thousands, if not millions, of

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

third parties, including those with whom Bang Energy enjoyed advantageous business relationships, throughout the United States, and specifically the State of Florida, by copying, displaying, referring to, hyperlinking to, and strongly encouraging consumers to visit the TAB website, and hyperlinking to and strongly encouraging consumers to review Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Monster Energy, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, developed false advertising cards that reproduce in hard copy format the TAB website's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and refer to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks and identify Bang Energy, and at times its CEO, as Florida residents, and further make false head-to-head comparisons between Reign and BANG® energy drinks (the "retail placards");

- Monster Energy and Reign Beverage, at the direction of and with Monster Beverage, placed the retail placards, or caused the retail placards to be placed, in store coolers and on store shelves in front of BANG® product throughout the United States, and specifically in the State of Florida, and advise and warn

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

customers not to purchase BANG® product and to instead purchase Reign and systematically removed BANG® product from store shelves and cooler space, removed BANG® displays, signs, and other marketing materials from stores, replaced BANG® products with Reign products on store shelves and cooler space, and turned cans of BANG® around or blocked BANG® product from view such that the BANG® name and logo are no longer visible to consumers, thereby increasing sales of Reign at the expense of confused consumers and Bang Energy;

- Monster Energy, at the direction of and with Monster Beverage, caused threatening letters to be mailed to Bang Energy's retailers and distributors that enclosed copies of Monster's own meritless complaint against Bang Energy in the California action, which parrots the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, to damage and did so damage Bang Energy's advantageous business relationships with distributors, retailers, and others engaged in the sale, distribution, and advertisement of energy drinks, and dietary and sports nutritional supplements.

180.   Defendants have intentionally and maliciously published and disseminated these false, misleading, and disparaging statements about the nature, characteristics, and qualities of Bang Energy's goods, services, and commercial activities with the express purpose of causing injury to Bang Energy and its goodwill, reputation, business, and its advantageous business relationships and opportunities and, as a direct and proximate result, have induced or otherwise caused disruption, termination, and/or violation of Bang Energy's advantageous business relationships.

181.   Defendants' knowingly false, misleading, and disparaging statements have caused

and are causing the consuming public and the energy drink, dietary and sports nutritional supplements industry and marketplace to falsely believe that the nature, characteristics, and qualities of Bang Energy's goods, services and commercial activities, are disreputable, dishonest and unlawful business, which is false.

182.   Defendants' conduct is causing both monetary damages and irreparable harm to Bang Energy's advantageous business relationships with its distributors and retailers, as well as to Bang Energy's goodwill and reputation, for which Bang Energy has no adequate remedy at law.

183.   Bang Energy has lost customers, sales, and advantageous business relationships and opportunities as a direct and proximate result of Defendants' intentional unlawful conduct.

184.   Defendants' conduct is continuing and will continue and, unless Defendants are enjoined from engaging in their wrongful conduct, Bang Energy will continue to suffer irreparable harm for which it has no adequate remedy at law.

185.   As a result of these fraudulent, malicious, and oppressive acts of Defendants, Bang Energy is also entitled to punitive damages.

## COUNT VI
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS
### (*Against All Defendants*)

186.   Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 60 through 66, 77 through 94, 105 through 135, 137 through 145 as though fully set forth herein.

187.   The Monster Defendants, Markerly, and the Influencer Defendants are each aware that Bang Energy's market share is steadily increasing and that Bang Energy has developed existing and prospective business relationships with current and potential customers, distributors, and retailers of sports-related supplements, vitamins, and other health, wellness, and fitness-focused products, as well as others engaged in the sale, distribution, and advertisement of energy

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

drinks, and dietary and sports nutritional supplements.

188.   The Monster Defendants, Markerly, and the Influencer Defendants have each intentionally and unjustifiably interfered with Bang Energy's prospective business relationships by making knowingly false and misleading statements regarding Bang Energy, its CEO, and BANG® energy drinks and thereby illegally denigrating Bang Energy, its CEO, and BANG® energy drinks in the minds of those with whom Bang Energy had prospective business relationships and opportunities during the launch of Monster's new product "Reign," a knockoff of Bang Energy's BANG® energy drinks.  More specifically,

- Monster Beverage conceived, development, and orchestrated the plan to interfere with Bang Energy's prospective business relationships and enlisted and directed its subsidiaries Monster Energy Company, Energy Beverages, and Reign Beverage to participate in the plan to interfere with Bang Energy's prospective business relationships;

- Energy Beverages, at the direction of and with Monster Beverage, registered and maintained the shame website, thetruthaboutbang.com (the "TAB website"), a fabricated consumer complaint, and directed communications about the TAB website to its e-mail address, dnsadmin@energybeveragesllc.com;

- Monster Energy Company, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, created the domain name and the content for the TAB website, including without limitation, as set forth therein, the intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks and the references and hyperlinks to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which

parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Markerly, at the direction of and in exchange for payment from Monster Beverage and Monster Energy Company, knowingly enlisted and paid the Influencer Defendants to, and the Influencer Defendants knowingly did, spread the TAB website's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, to hundreds of thousands, if not millions, of third parties throughout the United States, including those with whom Bang Energy enjoyed a prospective business relationships, and specifically the State of Florida, by copying, displaying, referring to, hyperlinking to, and strongly encouraging consumers to visit the TAB website and hyperlinking to and strongly encouraging consumers to review Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Monster Energy, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, developed false advertising cards that reproduce in hard copy format the TAB website's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and refer to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading

statements about Bang Energy, its CEO, and BANG® energy drinks and identify Bang Energy, and at times its CEO, as Florida residents, and further make false head-to-head comparisons between Reign and BANG® energy drinks (the "retail placards");

- Monster Energy and Reign Beverage, at the direction of and with Monster Beverage, placed the retail placards, or caused the retail placards to be placed, in store coolers and on store shelves in front of BANG® product throughout the United States, and specifically in the State of Florida, and advise and warn customers not to purchase BANG® product and to instead purchase Reign and systematically removed BANG® product from store shelves and cooler space, removed BANG® displays, signs, and other marketing materials from stores, replaced BANG® products with Reign products on store shelves and cooler space, and turned cans of BANG® around or blocked BANG® product from view such that the BANG® name and logo are no longer visible to consumers, thereby increasing sales of Reign at the expense of confused consumers and Bang Energy;

- Monster Energy, at the direction of and with Monster Beverage, caused threatening letters to be mailed to Bang Energy's retailers and distributors that enclosed copies of Monster's own meritless complaint against Bang Energy in the California action, which parrots the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, to damage and did so damage Bang Energy's existing and prospective business relationships with distributors, retailers, and others engaged in the sale, distribution, and advertisement of energy drinks, and dietary and sports nutritional supplements.

189.   Defendants have intentionally and maliciously published and disseminated these false, misleading, and disparaging statements about the nature, characteristics, and qualities of Bang Energy's goods, services, and commercial activities with the express purpose of causing injury to Bang Energy and its goodwill, reputation, business, and its current and prospective business relationships and opportunities and, as a direct and proximate result, have induced or otherwise caused disruption, termination, and/or violation of Bang Energy's prospective business relationships.

190.   Defendants' knowingly false, misleading, and disparaging statements have caused and are causing the consuming public and the energy drink, dietary and sports nutritional supplements industry and marketplace to falsely believe that the nature, characteristics, and qualities of Bang Energy and its CEO's goods, services, and commercial activities are disreputable, dishonest, and unlawful.

191.   Defendants' conduct is causing both monetary damages and irreparable harm to Bang Energy's prospective business relationships, as well as to Bang Energy's goodwill and reputation, for which Bang Energy has no adequate remedy at law.

192.   Bang Energy has lost customers, sales, and prospective business relationships and opportunities as a direct and proximate result of Defendants' intentional unlawful conduct.

193.   Defendants' conduct is continuing and will continue and, unless Defendants are enjoined from engaging in their wrongful conduct, Bang Energy will continue to suffer irreparable harm for which it has no adequate remedy at law.

194.   As a result of these fraudulent, malicious, and oppressive acts of Defendants, Bang Energy is also entitled to punitive damages.

## COUNT VII
## CIVIL CONSPIRACY

### (*Against All Defendants*)

195.   Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 60 through 66, 77 through 94, 105 through 135, 137 through 145 as though fully set forth herein.

196.   Monster Beverage, Monster Energy Company, Energy Beverages, and Reign Beverage each agreed with the other, and Markerly agreed with Monster Beverage and Monster Energy Company, and the Influencer Defendants each agreed with Markerly to intentionally damage Bang Energy's goodwill, reputation, business, and business relationships by publishing and disseminating to third parties throughout the United States, and specifically in the State of Florida, and to Bang Energy's retailers and distributors, knowingly false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and thereby illegally denigrating Bang Energy, its CEO, and BANG® energy drinks in the minds of *inter alia* consumers, retailers, and distributors during the launch of Monster's new product "Reign," a knockoff of Bang Energy's BANG® energy drinks that flagrantly infringes on Bang Energy's intellectual property,[48] with the intent to cause, and did so cause, consumers to purchase Reign and/or other Monster products and to not purchase BANG® energy drinks, and to harm Bang Energy's goodwill, reputation, business, and business relationships, thereby increasing Monster's goodwill and market share, increasing Reign's profits and Monster Energy Company's profits, and increasing Monster Beverage's revenue and share price, for financial benefit to Monster Beverage, Monster Energy Company, Energy Beverages, Reign Beverage, Markerly, and the Influencer Defendants (the "conspiracy").

---

[48] Such infringement is not at issue in the instant action; rather, it is the subject of a separate lawsuit, *Vital Pharmaceuticals, Inc. v. Monster Energy Company, reign Beverage Company, LLC*, Case No. 0:18-cv-60809-UU, pending in the United States District Court, Southern District of Florida.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

197.   In furtherance of the conspiracy:

- Monster Beverage, because it had lost and was continuing to lose significant market share to Bang Energy, conceived, developed, and orchestrated the conspiracy, enlisting and directing its subsidiaries Monster Energy Company, Energy Beverages, and Reign Beverage to participate in the conspiracy;

- Energy Beverages, at the direction of and with Monster Beverage, registered and maintained the shame website, thetruthaboutbang.com (the "TAB website"), a fabricated consumer complaint, and directed communications about the TAB website to its e-mail address, dnsadmin@energybeveragesllc.com;

- Monster Energy Company, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, created the domain name and the content for the TAB website, including without limitation, as set forth therein, the intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, the videos and images that infringe upon Bang Energy's copyrights, and the references and hyperlinks to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Markerly, at the direction of and in exchange for payment from Monster Beverage and Monster Energy Company, knowingly enlisted and paid the Influencer Defendants to, and the Influencer Defendants knowingly did, spread the TAB website's intentionally false and misleading statements about Bang Energy, its

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

CEO, and BANG® energy drinks, to hundreds of thousands, if not millions, of third parties throughout the United States, and specifically the State of Florida, by copying, displaying, referring to, hyperlinking to, and strongly encouraging consumers to visit the TAB website and the videos and images therein that infringe upon Bang Energy's copyrights, and hyperlinking to and strongly encouraging consumers to review Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and identify Bang Energy, and at times its CEO, as Florida residents;

- Monster Energy, Energy Beverages, and Reign Beverage, at the direction of and with Monster Beverage, developed false advertising cards that reproduce in hard copy format the TAB website's intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, and refer to Monster's own meritless complaint in the California action and the copycat class action filings that followed, which parrot the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks and identify Bang Energy, and at times its CEO, as Florida residents, and further make false head-to-head comparisons between Reign and BANG® energy drinks (the "retail placards");

- Monster Energy and Reign Beverage, at the direction of and with Monster Beverage, placed the retail placards, or caused the retail placards to be placed, in store coolers and on store shelves in front of BANG® product throughout the

United States, and specifically in the State of Florida, and advise and warn customers not to purchase BANG® product and to instead purchase Reign and systematically removed BANG® product from store shelves and cooler space, removed BANG® displays, signs, and other marketing materials from stores, replaced BANG® products with Reign products on store shelves and cooler space, and turned cans of BANG® around or blocked BANG® product from view such that the BANG® name and logo are no longer visible to consumers, thereby increasing sales of Reign at the expense of confused consumers and Bang Energy;

- Monster Energy, at the direction of and with Monster Beverage, caused threatening letters to be mailed to Bang Energy's retailers and distributors that enclosed copies of Monster's own meritless complaint against Bang Energy in the California action, which parrots the same intentionally false and misleading statements about Bang Energy, its CEO, and BANG® energy drinks, to damage Bang Energy's existing and prospective business relationships with its distributors and retailers.

198.   By combining forces to execute their unlawful scheme, the Monster Defendants, Markerly, and the Influencer Defendants wielded a unique power of coercion over consumers, distributors, and retailers that each independently would not have possessed resulting in ongoing financial injury to Bang Energy.

199.   As a further result of each Defendant's fraudulent, malicious, and oppressive acts in furtherance of the conspiracy, Bang Energy is also entitled to punitive damages.

**COUNT VIII**
**DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT**
(*Against All Defendants*)

200.   Bang Energy realleges and incorporates by reference Paragraphs 8 through 24, 60

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

through 66, 77 through 94, 105 through 135, and 137 through 145 as though fully set forth herein.

201.    The Bang Energy videos and images appearing on the TAB website and on the websites and social media pages of the Influencer Defendants are original copyrightable work. JHO Intellectual Property Holdings, LLC has complied in all respects with 17 U.S.C. § 101, et seq. and secured the exclusive rights in these original works for which it filed for registration in the Copyright Office in accordance with its rules and regulations.   JHO Intellectual Property Holdings, LLC received Registration Nos. Pau 3-956-585 and Pau 3-956-580 on March 21, 2019, true and correct copies of which are collectively attached hereto as **Exhibit P** (Certificates of Registration).  JHO Intellectual Property Holdings, LLC owns all rights, title, and interest in these copyrights for which Bang Energy is the exclusive licensee.

202.    The Monster Defendants infringed on Bang Energy's copyrights by its knowing and unlawful reproduction, distribution, and use of videos and images on the TAB website that are identical and/or substantially identical to Bang Energy's original works.

203.    Markerly and the Influencer Defendants infringed on Bang Energy's copyrights by their knowing and unlawful reproduction, distribution, and use of images on their websites and social media accounts that are identical and/or substantially identical to Bang Energy's original works and by inducing, participating in, aiding and abetting, and profiting from the Monster's Defendants' illegal reproduction, distribution, and use of Bang Energy's original works on their websites and social media accounts by hyperlinking to and strongly encouraging consumers to visit the TAB website specifically to view the clearly infringing videos and images.

204.    Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of Bang Energy's copyrights, and in conscious disregard for Bang Energy's exclusive rights in the protected works.

205.   Defendants' infringement has caused and continues to cause Bang Energy to suffer both monetary damages and irreparable harm for which Bang Energy has no adequate remedy at law.  Bang Energy is entitled to recover the Defendants' profits, Bang Energy's actual damages, or the highest awardable statutory damages against the Monster Defendants, Markerly, and the Influencer Defendants.  Bang Energy is also entitled to recover costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Bang Energy demands judgment as follows:

1.      A preliminary and permanent injunction barring Defendants from engaging in the unlawful conduct described above;

2.      Compensatory and/or consequential damages, including lost profits and Bang Energy's counter-promotion costs;

3.      Statutory damages;

4.      Punitive damages;

5.      Treble damages, Defendants' profits, and/or costs of the action pursuant to 15 U.S.C. § 1117, or as otherwise permitted by law;

6.      A declaration that this is an exceptional case and awarding Bang Energy attorneys' fees as the prevailing party pursuant to 15 U.S.C. § 1117;

7.      A declaration that Defendants have infringed Bang Energy's exclusive copyrights under the Copyright Act in the copyrighted work and that such infringement is willful;

8.      An award of actual damages caused by, and disgorgement of Defendants' profits in connection with, Defendants' copyright infringement under 17 U.S.C. § 504(b) in amounts to be determined at trial, or, at Bang Energy's election, an award of statutory damages under 17 U.S.C. § 504(c) in an amount to be determined by the Court up to a maximum of $150,000 based on Defendants' willful infringement of the copyrighted work;

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

9. Bang Energy's costs and disbursements incurred in this action, including its reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

10. Permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, from directly or indirectly infringing Bang Energy's copyright or marketing, offering, selling, disposing of, licensing, leasing, transferring, publicly displaying, advertising, reproducing, developing or manufacturing any works derived or copied from the Bang Energy's copyrighted work or participating or assisting in any such activity.

11. Reasonable attorneys' fees and costs of the suit;

12. Pre-judgment and post-judgment interest;

13. For such other and further relief, legal or injunctive, as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Bang Energy demands a trial by jury pursuant to Federal Rule of Civil Procedure 38.

Dated: February 21, 2020.

<div align="right">

*s/ Holly L.K. Heffner*
**MILES D. SCULLY**
*Admitted Pro Hac Vice*
*mscully@grsm.com*
**TIMOTHY K. BRANSON**
*Admitted Pro Hac Vice*
*tbranson@grsm.com*
**HOLLY L.K. HEFFNER**
*Admitted Pro Hac Vice*
*hheffner@grsm.com*

**GORDON REES SCULLY MANSUKHANI LLP**
101 W. Broadway, Suite 2000
San Diego, California 92101
Tel: (619) 696-6700

</div>

*Attorneys for Plaintiff,*
*Vital Pharmaceuticals, Inc.*

*s/ Andrew R. Schindler*
**ANDREW R. SCHINDLER**
Florida Bar No. 124845
*aschindler@grsm.com*

**GORDON REES SCULLY**
**MANSUKHANI LLP**
100 SE 2nd Street, Suite 3900
Miami, Florida 33131
Tel: (305) 428-5330
*Attorneys for Plaintiff,*
*Vital Pharmaceuticals, Inc.*

**FRANCIS MASSABKI**
Florida Bar No. 687901
*frank.massabki@vpxsports.com*

**VITAL PHARMACEUTICALS, INC.**
1600 North Park Dr.
Weston, FL 33326
Tel: (954) 641-0570
*Attorneys for Plaintiff,*
*Vital Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

*s/ Andrew R. Schindler*